Jones, J.
As the law now stands in England and this state a court of equity will not enforce the specific performance of a contract for the rendition of mere personal services. The temporary injunction in question cannot, therefore, be sustained as a means of enforcing such performace. If there is no other ground for sustaining it, it must be dissolved. This injunction, however, was sued out to prevent the defendant Sohlke from violating a'covenant not to render her personal services as a danseuse to persons other than the plaintiffs, on the ground that her breach of that covenant would inflict irreparable injury on the plaintiffs. Assuming that this is a good cause for issuing an injunction, I will address myself to the question as to whether* the papers show that a temporary injunction is necessary to prevent irreparable damage to the plaintiffs, which-would otherwise arise from the breach' of that covenant. To determine this it will he necessary to glance at the contract. Its provisions have a tw# fold *281 object: 1st. To secure the services of the defendant Sohlke. 2d. To prevent her appearing at another theatre, so that she shall not add to the attractions of another theatre within a reasonable vicinage of the plaintiffs, thereby drawing custom from the plaintiffs’ establishment. To effect this latter object the restrictive clause in question is inserted in the contract. The reason for its insertion is not given in the contract, it is true. But for the decision of this motion it is necessary to inquire and ascertain the reason of the prohibition, for equity does not interpose its strong arm through its writ of injunction, pendente lite, except when it can perceive that some benefit is to be gained which is substantial and commendable in its nature. If, then, the object of the restrictive clause was to prevent the defendant Sohlke from dancing for others, without any substantial benefit to arise therefrom to the plaintiffs, an injunction should not issue. How what benefit can arise to the plaintiffs from such prevention ? It is said that if she is prevented from gaining her livelihood in the employment of others, she will necessarily be obliged to keep her contract with the plaintiffs. Even conceding, for th¿ purposes of this motion, that the conclusion drawn from the premises of this argument is correct, still such expected benefit is insufficient to authorize an injunction. It is\ calling on the court to effect indirectly that which it J refuses to do directly, viz: to compel a specific perform- / anee. That, I for one, decline to do. We must either */ overturn the doctrine that a specific performance will not, be compelled, or steadily refuse to grant relief which is solely designed to effect that object. It is conceded by the plaintiffs’ counsel that a specific performance will not be decreed, and even if it were not, the propriety of a principle which has been announced and sustained by the courts of England and this state down to the present time would not be permitted to be discussed, much less over *282 ruled, on a motion to vacate a temporary injunction. The only other benefit which I can perceive as likely to arise to the plaintiffs from the prevention is that above suggested, viz. the prevention of the defendant Sohlke drawing [J custom from the plaintiffs by dancing at another establish-I ment. It can readily be perceived how important it might be for a manager, even if he could not compel the services of one whom he had employed, still to be able to prevent the' appearance of that employee at a rival theatre. IjFor a strong illustration, take two rival ballet companies, giving performances in the city of New York, one having in its engagement a danseuse superior and more attractive than any in the city, but otherwise being uequalin strength and attractions. Now if the superior ManseS&e-sefuse-to-perform for tiie company to whom she is engaged, the two companies become equal, but if she performs for the other company, then that company becomes the superior in strength and- attractiveness. In the case put, it is evident that the damage ensuing on the transfer of the services is greater than that which would ensue on the mere non-performance. The damage it is clear, would be more or less according to the' merit, attractiveness or reputation of the performer. In some cases the damage would be merely nominal, while in others it would be impossible to measure .it. It is for the reason that it is utterly impossible to measure the damages, that equity interferes to prevent the violation of such a restrictive clause as the one in question, when it can perceive that such violation will damnify the party seeking its interference. /Bearing these principles in view, can the court upon the papers presented, perceive that the prevention asked for will benefit the plaintiffs ? These papers show that the plaintiffs have at present no establishment in the city of New York, or its immediate vicinity or elsewhere, in active operation. And that there is no pros *283 pect of having one for some length of time to come. It cannot, therefore, be said that the performance of the defendant Sohlke at another theatre draws, or tends to draw, custom from them. It may be urged that at some period hereafter they may have an establishment, and in that event the public performance of the defendant Sohlke in the meantime will have so satiated the public as that they will not care to go to see her when she again performs for them. This assumes that she will again perform for them. Such a bare assumption affords no basis for legal action.
As, then, this injunction can be sustained only on the ground that it will benefit the plaintiffs by preventing a withdrawal of custom from them, and as from the papers it appears that her performing for other parties cannot, for the present at least; withdraw custom from the plaintiffs, the injunction must be dissolved. This may be expressed somewhat differently. An injunction is granted to prevent the breach of a covenant, not to. perform an act of a personal character, or relating to personal property, only on the ground that the performance of the act would produce irreparable damages. Consequently, when no damage can result, there' can be no injunction. In the present case the performance of the act in question (considered irrespective of any connection with the obligation to render services to the plaintiffs) can only produce damage by withdrawing custom from the establishment of the plaintiffs. As then, the plaintiffs have not at present, and are not likely to have for some time to come, . an establishment in active operation, therefore no custom can, at present, be withdrawn from them, and it follows that no damages are now resulting, or can be anticipated to result, for some time to come, from the act which it is sought to enjoin. For this reason, without adverting to any other, the present temporary injunction should be dissolved, with $10 costs.