# Iron Age Publishing Co. *v.* Western Union Telegraph Co.

*Bill in Equity for Injunction against Breach of Contract.*

1. *Specific performance; certainty and definiteness in contract.*—The bill in this case sought an injunction against a breach of contract, in the nature of a bill for specific performance, claiming that complainant had purchased from the New York Associated Press, a foreign corporation, the exclusive right to have and use all the associated press dispatches prepared and sent by telegraph from New York city, and seeking to prevent their delivery by the defendant telegraph company to the defendant newspaper publishing companies; but it did not allege when or where the contract was made, nor where it was to be performed, nor the consideration paid or to be paid, nor state the name of the defendant's agent with or by whom the alleged contract was made; *held* demurrable for uncertainty and indefiniteness in these particulars, under the strict rule applicable to bills for the specific performance of contracts.

2. *Parties to bill.*—When the bill is filed against a domestic corporation and a foreign corporation doing business in this State, but seeks to specifically enforce, by injunction against a breach, an alleged contract made between complainant and another foreign corporation, that corporation is an indispensable party to the bill; and unless it voluntarily appears, or can be constructively brought within the jurisdiction of the court, the bill can not be sustained against the other defendants.

3. *Foreign corporations as defendants.*—Under statutory provisions (Code of 1876, § 3753; Code of 1886, § 3414), a court of equity here has no jurisdiction to enforce the specific performance of a contract made with a foreign corporation, or to prevent its breach by process of injunction against resident defendants, when the contract relates to personal services only, and it is not alleged that it was made in Alabama, or that it was to be performed here.

4. *Want of jurisdiction as defense; how taking advantage of.*—When the want of jurisdiction as against a foreign corporation, an indispensable party defendant, appears on the face of the bill, the other defendants may take advantage of it by demurrer, or by motion to dismiss, although a plea to the jurisdiction would be proper for that corporation.

5. *Specific performance; contract for personal services; injunction against breach.*—A court of equity will decline to decree the specific performance of a contract for personal services, involving the exercise of special skill, judgment and discretion, continuous in their nature, and extending through an indefinite period of time, since it would be impracticable to enforce such decree; and injunctions to prevent the breach of such contracts, although the remedy by action at law for damages may not be adequate, are granted with great caution, especially by the courts of this country.

6. *Same; want of mutuality in contract.*—Mutuality of remedy, as well of obligation, is an essential requisite in a contract, such as will

[Iron Age Publishing Co. v. Western Union Telegraph Co.]

be specifically enforced; and where the contract imposes on the complainant continuous duties, involving personal labor, skill and diligence, which the court can not superintend or specifically enforce against him, it will not be enforced at his instance against the other party.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 2d August, 1887, by the Iron Age Publishing Company, a domestic corporation organized under the general statutes in 1882, against the News Publishing Company, and the Morning Herald Publishing Company, two domestic corporations also incorporated under the general statutes; the Western Union Telegraph Company, a corporation organized under the laws of New York, but having an office and doing business at Birmingham; the New York Associated Press, and the Western Associated Press, two corporations organized under the laws of New York, and William H. Smith, a citizen of New York, who was the general manager of said two corporations last named. The complainant was engaged in the business of publishing a morning newspaper at Birmingham, called *The Birmingham Age*, and claimed the exclusive right, under contract with said New York Press associations, to have and use the "Associated Press Dispatches," as they were termed; and the bill prayed an injunction, " to enjoin and restrain said Western Associated Press and New York Associated Press from selling, transmitting or furnishing, and said Western Union Telegraph Company from delivering the 'Associated Press Dispatches,' to said News Publishing Company, said Herald Publishing Company, or to any one for them."

As to said "Associated Press Dispatches," the second paragraph of the bill contained these averments: " Said Western Associated Press and New York Associated Press are corporations engaged in gathering and disseminating news, in this way: They have one or more agents and correspondents in many of the large and important cities and towns in the United States, who gather and transmit daily, by telegraph, to the chief offices of the Associated Press in New York city, and other points, all news of importance and general interest to the public; and said Associated Press transmits said news daily, by telegraph, to all newspapers in the United States that are entitled thereto, such news so transmitted being known as *'Associated Press Dispatches;'* but the newspapers which get these dispatches are required

to pay said Associated Press a stipulated price therefor. Said Associated Presses are consolidated, and operated under one management, and are in effect the same corporation; and said W. H. Smith is the general manager of both of them."

The contract under which complainant claimed the exclusive right to these press dispatches was thus stated in the third paragraph of the bill: "Ever since complainant began the publication of said *Birmingham Age*, it has been a subscriber for said Associated Press Dispatches, and has received and published the same. Complainant has paid therefor large sums of money, ranging from $45 to $85 per week. Complainant has always had, and still has, the sole and exclusive right to receive and publish said Associated Press Dispatches in Birmingham. Complainant has this right under and by virtue of a good and valid contract heretofore made and entered into with said Associated Presses, for a good and sufficient consideration. Besides paying for said dispatches, complainant gathers and transmits to said Associated Presses items of news transpiring in and around Birmingham, as a part of the consideration therefor, complainant being their agent and correspondent at Birmingham under said contract. Said contract was made with the said Associated Press, through its agent, who was duly authorized to make the same, and is now in full force and effect, and will, by its terms, continue to remain in full force and effect, so long as complainant shall pay said Associated Press therefor, and shall comply with its agreement to' act as the agent and correspondent of said Associated Press at Birmingham, Alabama, in the transmission of news to the same. Complainant alleges that it has, at all times, fully complied with all the terms of said contract, and is ready, willing, and able to do so. Complainant alleges that the contract herein set forth, made with complainant by said Associated Press, through its authorized agent as aforesaid, was, after the making of the same, duly made known to said Associated Press, and said Associated Press has, with full knowledge thereof, furnished to complainant the dispatches therein provided for; and complainant has paid for the same, as provided for in said agreement, and has rendered the services therein provided for as agent and correspondent at Birmingham. The terms of said contract have been fully understood by both parties thereto, except with reference to the right of said Associated Press to send dispatches to an evening paper published in the city of Birmingham. The correspondence be-

tween complainant and said Associated Press, in relation thereto, shows that said Associated Press knew that said contract, made as aforesaid, clothed complainant with the exclusive right to the dispatches covered by the terms of said contract."

A demurrer to the bill was filed by the Western Union Telegraph Company, and also by the "Herald Company," each assigning specially thirteen causes or grounds of demurrer. The assignments from one to seven, inclusive, alleged that the bill was "vague, indefinite, and uncertain," in these particulars: 1st, "because it fails to aver when the said alleged contract was executed;" 2d, "because it fails to allege where the said contract was executed;" 3d, "because it fails to allege what consideration was paid, or to be paid, under said alleged contract;" 4th, "because it fails to allege when the said alleged contract was to begin, or become operative;" 5th, "because it fails to allege when said contract was to terminate;" 6th, "because it fails to show whether said alleged contract was verbal or written;" 7th, "because it alleges that complainant made a contract with an agent of said Associated Press, but fails to state who the agent was, or to give his name." The 8th assignment was: "Because the bill fails to show such a complete contract between complainant and said Associated Press as this court could enforce, nowhere setting out the terms of said contract, but only the legal conclusions of the pleader." The 12th assignment was: "Because the bill shows that the Western Associated Press, the New York Associated Press, and W. H. Smith, at the time of filing said bill, were non-residents of the State of Alabama, and that they are indispensable parties to the suit, without whom it can not be maintained against this defendant; and the bill shows that the suit does not concern an estate or charge upon lands, or the disposition thereof, nor any interest in, title to, or incumbrance upon personal property within this State; nor did the cause of action arise, nor was an act on which the suit was founded to have been performed, in this State."

The chancellor sustained the demurrer on the 8th and 12th causes assigned, and his decree is here assigned as error.

SMITH & LOWE, and TALIAFERRO & SMITHSON, for appellant. (1.) The bill is not for the specific performance of a contract against a non-resident defendant, but for an injunction to

prevent a breach of that contract by defendants who are within the jurisdiction of the court. These resident defendants can not raise any objections on account of the non-residence of others, nor can the court know that the non-residents will not voluntarily appear, and submit to the jurisdiction of the court.—*Horton v. Sledge*, 29 Ala. 478; *Manning v. Nicaragua*, 14 How. Pr. 517. (2.) The court has undoubted jurisdiction to restrain by injunction a breach of contract by defendants within its jurisdiction, although it might not decree a specific performance against non-residents. *Casey v. Holmes*, 10 Ala. 785; 15 Myers' Fed. Decisions, §§ 1075, 1304; *Waldron, Isley & Co. v. Simmons*, 28 Ala. 632; Pomeroy's Equity, 374, § 1343; *Ib.* 372, 391; High on Injunctions, § 2. (3.) The contract was to be performed in Alabama—the dispatches were to be delivered and received at Birmingham; and the material stipulations are set out in substance, or according to their legal effect, which is all that is required.—*Reel v. Overall*, 39 Ala. 138; 1 Brick. Digest, 702, § 905.

Webb & Tillman, J. J. Altman, and Martin & McEachin, *contra.*—(1.) The contract sought to be enforced, as set out in the bill, is for the performance of personal services, running through an indefinite period of time, showing duties which are continuous, involving skill, personal labor, cultivated judgment and discretion, the performance of which it is utterly impracticable for the court to superintend or enforce, against either the defendants or the complainant; and therefore the court will decline jurisdiction.—Waterman on Spec. Performance, §§ 33, 49, 117; 3 Pom. Equity, § 1405; *De Rivafinoli v. Corsetti*, 4 Paige, 270; *Marble Co. v. Ripley*, 10 Wall. 358; *P. C. Railroad Co. v. C. & T. Railroad Co.*, 13 Ohio St. 550; *Richmond v. Railroad Co.*, 33 Iowa, 486; *Railroad Co. v. Speer*, 32 Geo. 550; *Blanchard v. Railroad Co.*, 31 Mich. 43. (2.) The bill seeks, in effect, the specific performance of a contract with a non-resident corporation, which is not subject to the process of the court; and it does not state a case which comes within any of the statutory provisions.—Code, § 3753; *Elyton Land Co. v. Sayre*, 73 Ala. 98. (3.) The terms of the alleged contract are not stated with that degree of certainty and definiteness which is required in suits for the specific performance of contracts. *Gould v. Womack*, 2 Ala. 83; *Andrews v. Andrews*, 28 Ala. 432; *Derrick v. Monette*, 73 Ala. 75; *Moon v. Crowder*,

72 Ala. 79; *Goodwin v. Lyon*, 4 Porter, 277; *Dial v. Hair*, 18 Ala. 789; Whart. Spec. Perf., § 6.

SOMERVILLE, J.—The bill is one in the nature of specific performance, seeking, by the auxiliary force of an injunction, to prevent the breach of an alleged contract by the New York Associated Press selling, as is insisted, to the complainant—the Iron Age Publishing Company—an exclusive right to receive and publish at Birmingham, Alabama, all of the Associated Press Dispatches gathered and prepared for the press by the New York company, and transmitted over the telegraph lines of the Western Union Telegraph Company, which body corporate is also made a party defendant to the bill. The breach complained of is averred to be the delivery of these dispatches, for publication, to the Morning Herald Publishing Company, and the News Publishing Company, which companies publish a daily paper in the city of Birmingham, and are also made parties defendant to the present suit.

The chancellor sustained a demurrer to the bill, and the complainant brings this appeal. Some of these grounds of demurrer we proceed to discuss.

1. The first which we notice is based on the alleged uncertainty of the contract as set out in the third paragraph of the bill. The rule of law as to pleadings on this subject is more stringent in bills for specific performance, than in other cases. The terms of the contract must be distinctly alleged, so as to leave none of its essential details in doubt or uncertainty. Vagueness of statement, or indefiniteness, as to matters of substance, is not permitted. Facts must be clearly stated, not left to inference by the court. So, in like manner, the proof is required to be clear, definite and satisfactory; and a strict correspondence must exist between the alleged terms of the contract and the proof seeking to establish it.—*Derrick v. Monette*, 73 Ala. 75. The contract, in other words, which the court is asked to enforce, must be alleged and proved to be "reasonably certain as to its subject-matter, its stipulations, its purposes, its parties, and the circumstances under which it was made."—3 Pomeroy's Eq. Jur., § 1405. Unless the court be fully advised as to what particular obligations the parties have undertaken to assume, and what specific rights they have mutually stipulated to confer, it would be impossible to adjudge whether the contract is sufficiently fair, just and equitable in its parts, to

justify its enforcement by the strong arm of the court, or to render a decree intelligibly settling the rights and duties of the parties which the court is asked to enforce.

The contract averred to exist between the complainant and the New York Associated Press does not seem to us to possess these requirements. It is not stated with sufficient definiteness, if at all, *when* the contract was made, nor *where* it was entered into, nor where to be performed, whether in or out of the State of Alabama,—a fact material to the inquiry of jurisdiction. While it is alleged to have been made with an agent of a non-resident defendant, the bill fails to give the name of the alleged agent, that issue may be taken on the fact of his authority. The consideration agreed to be paid by the complainant is not alleged, except that it was a "good and sufficient consideration," and that the complainant *had paid* large sums of money, ranging from forty to eighty-five dollars per week. The subsequent averment, in another part of the bill, that the complainant had paid the amount provided for in the agreement, leaves the court to struggle by inference to frame the contract by putting together these several parts. We are of opinion that the description of the contract is not sufficiently certain in these, and, it may be, some other particulars, to justify the intervention of a court of equity for its specific enforcement.

2.    The objection is further taken by the Telegraph Company, and the Publishing Companies, that the facts stated in the bill show *prima facie* a want of jurisdiction of the case, because the contract sought to be enforced was made by the New York Associated Press, and the bill shows on its face that this defendant, being an indispensable party, is a non-resident corporation, against which, in the absence of appearance, it is impossible for the court to proceed. It is too plain for argument, that this foreign corporation is an indispensably essential party, and that unless jurisdiction can be obtained of its person, either constructively under statutory provisions, or by voluntary appearance, the case must speedily end in a dismissal of the bill.

3.    The whole subject of jurisdiction of non-residents is one of statutory creation and regulation. Our statutes make no distinction, in this particular, between non-resident natural persons and foreign corporations. There are but two general classes of cases where they are allowed to be sued in the courts of Alabama. The first is by process of attachment at law, under like circumstances, and in like

manner as against natural persons residing without the State. Code, 1876, § 3263. The other is in any case in equity, arising under subdivision 2 of section 3753 of the Code of 1876, designated as section 3414 of the present Code of 1886, which confers jurisdiction on courts of chancery against non-residents, in four particular classes of cases: (1) when the object of the suit concerns an estate of, or lien or charge upon *lands* within this State, or the disposition thereof; or (2) any interest in, title to, or incumbrance on *personal property* within this State; or (3) when the cause of action *arose* in this State; or (4) when the act on which the suit is founded was to have been *performed* in this State. The jurisdiction, as thus conferred, is plainly statutory and limited; and the general rule being, that a foreign corporation can not be sued, unless it voluntarily appears to defend, it being impossible for the court to extend the arm of its process into a foreign State or territory, for the purpose of reaching it, it follows that the bill can not be retained, unless the case made by it falls within the statute, or else it is made to appear that this objection has been obviated by an actual appearance of the defendant, so as to confer jurisdiction of its person.—*Sayre v. Elyton Land Co.*, 73 Ala. 85; *Galpin v. Page*, 18 Wall. 350; Field on Corporations (Wood's Ed.), § 329, note 3; *Camden &c. Co. v. Swede Iron Co.*, 32 N. J. L. 15; Freeman on Judg. (3d Ed.), §§ 567, 568.

The present case concerns neither land nor personal property, but a contract for personal services. As we have above said, the bill fails to aver, with sufficient certainty, that the contract arose in this State, or was to be performed within its jurisdiction. The place where it was made, whether New York or Alabama, is not stated. Nor does it appear from the bill, with sufficient particularity, that the telegraphic despatches were, *under the contract*, to be delivered to the complainant by the New York Associated Press, at Birmingham, through the agency of the telegraph company, or only to the latter company in New York, to be by them transmitted to complainant as complainant's agent, without further liability on the part of the Associated Press. The bill thus fails to bring the case within the class specified by the statute, and, therefore, shows no jurisdiction in chancery.

4. The question of jurisdiction, as we have seen, is raised by demurrer of the resident defendants, the Telegraph Company and the Publishing Companies. If the New York

company had attempted to raise it, the appropriate and better mode would no doubt have been by plea to the jurisdiction.—*Camden &c. Co. v. Swede Iron Co.*, 32 N. J. L. 15, *supra*. But, in this case, where the granting and perpetuation of the injunction prayed for is the whole case made by the bill, we think it eminently proper that the question should be raised by demurrer, or motion to dismiss, when the defect of jurisdiction appears on the face of the bill, and is raised by a co-defendant. It is said that the court can not inspect the bill, and from it know that the foreign corporation has not appeared. To this it may be answered, that the bill itself shows that an indispensable and leading party, whose rights are prejudiced by the injunction, and in whose absence no decree of any kind can be rendered, had not been brought before the court by reason of the impossibility of reaching it by process. There is no presumption that the New York corporation, chartered by and domiciled in a foreign State, will leave that territory, where it is alone suable, and respond to proceedings in Alabama, where it is not suable. If the complainant is entitled to an injunction, based only on the contrary presumption, he must show by the bill a case in which an injunction can be equitably and properly granted—such a one as would be binding on the non-resident party, and enforceable in some mode known to chancery procedure. A *brutum fulmen* is no more to be tolerated in courts that in any other forum charged with the responsibility of preserving their own respect. Nor, when the case made by the bill fails to authorize the extraordinary process of injunction, can the court grant it upon the speculative contingency, that the parties, by subsequent appearance, may make a case where its action would be justified. "No sovereignty," says Mr. Story in his Conflict of Laws, "can extend its process beyond its own territorial limits, to subject either persons or property to its judicial decisions. Every exertion of authority of this sort beyond this limit is a mere nullity, and incapable of binding such person or property in any other tribunal."—Story Conf. Laws, 539. Says another author, touching the same subject: "The authority of every judicial tribunal, and the obligation to obey it, are circumscribed by the limits of the territory in which it is established."—Burge's Com. on Colonial & Foreign Law, p. 1044.

The facts of the bill show that the court has no such jurisdiction of the Associated Press as to authorize the issue

of the injunction asked. The case thus falls within the general rule, that whenever any ground of defense is apparent on the face of the bill itself, either from matter contained in it, or from any defect in its frame, or in the case made by it, the proper mode of defense is by demurrer.—Adams' Eq. 333 *et. seq.*; Story's Eq. Pl., §§ 436, 646; Mitford & Tyler's Equity Pl. pp. 202, 311; Robinson's Elementary Law, §§ 337, 285.

The case of *Manning v. State of Nicaragua*, 14 How. Pr. Rep. 517, cited by appellant's counsel, to say nothing of its questionable soundness, differs from this case in not being one where an injunction was asked, the court regarding the suit as one inviting a foreign State to appear and defend. Here, the court is requested to assume jurisdiction *in limine*, before the appearance of the non-resident party chiefly affected by the issue of the writ, and to tie the hands of all parties until the final hearing. This, on the facts stated in the bill, the court has no power to do, the case not being one of the class specified in the statute.—Code, 1876, § 3753.

5. A further question of great importance arises under the issue made by the eighth assignment of demurrer. Is the contract in question one which, in its nature, is practicable to be enforced by a court of equity, so as to do substantial justice to both of the contracting parties, the Iron Age Publishing Company, and the New York Associated Press, admitting, for the sake of argument, the jurisdiction by the court of the subject-matter and the parties? It is insisted for the appellees, that the contract being one for the performance of *personal services* by the Associated Press, involving the exercise of special skill, judgment and discretion, and which are continuous in their nature, running through an indefinite period of time, the enforcement by specific performance is impracticable, and jurisdiction must be declined.

It is unquestionable, that the courts of equity will not intervene to affirmatively compel specific execution in cases of this kind, because this is impracticable, the only power of the court being, at most, to punish the defendant by fine and imprisonment for refusing to obey its mandates.—*Clark's case*, 12 Amer. Dec. 213, and note p. 217; *Marble v. Ripley*, 10 Wall. 339; Pomeroy on Contr., § 310. And in many cases the courts have refused to interfere by injunction, or otherwise, to prevent the breach of such contracts, although the remedy by damages at law was not adequate. This is put on the ground, that if the court was unable to enforce

the affirmative part of a contract, it would refuse to restrain the violation of the negative part of it. The subject has been elaborately discussed, both in England and in this country, chiefly in cases where injunctions have been sought to prevent the breach of agreements made by operatic singers and theatrical performers, to sing or perform exclusively for one employer, during a given period of time. In the earlier cases in England, commencing with the leading case of *Kemble v. Kean*, 6 Sim. 333, it was held, that, for the breach of such contracts, except in certain cases of partnership, the complaining parties must seek their remedy at law, and that chancery would decline to interfere by injunctive relief. The authority of this case, and others following it, has however been entirely overthrown, and in the case of *Lumley v. Wagner*, 1 D., M. & G. 604, s. c., 13 Eng. L. & Eq. 252, the contrary doctrine was established, and has since been firmly adhered to by the English courts. In that case, the defendant agreed to sing at the plaintiff's theatre on certain terms, and for a stipulated time, and during such period to sing nowhere else. She made an engagement during this time to sing at a rival theatre, and refused to perform her contract with the plaintiff. Although unable to enforce the contract specifically, the court did not hesitate to interfere by injunction to prevent the violation of the negative stipulation, by which the defendant bound herself not to sing any where else than at the plaintiff's theatre. This case expressly overruled *Kemble v. Kean*, and other decisions following it. The principle was soon extended, and like relief granted in cases where the negative promise was not express, but implied from the contract of the parties.—Anson on Contr. (2d Amer. Ed. 1887), p. 413, and *note* 1; 3 Pom. Eq. Jur., § 1343; Pomeroy on Contr., §§ 310, 311, 24, 25.

The American courts have generally been disposed to follow the rule declared in *Kemble v. Kean*, and, as said by Mr. Pomeroy, they have exhibited a strange disinclination to adopt the modern English rule declared in *Lumley v. Wagner*, enforcing the specific performance of such contracts negatively by means of injunction restraining their violation. The American cases are divided, however, on this subject, with a numerical weight of authority, perhaps, against the later English rule, but, as we apprehend, with a disposition recently to fall into line with the more reasonable doctrine of *Lumley v. Wagner*. We leave this important question

open, however, as we shall decide the case upon another point, conceding, for the purposes of this case, the right and propriety of exercising such jurisdiction at the instance of the complainant. Injunctions of this character, especially under the American rulings, are granted with great caution by the courts. We cite the following authorities on the subject, all of which we have examined, with many more: *Singer Sewing Machine Co. v. Union &c. Co.*, 1 Holmes (1873) U. S. C. Ct. 253; *Hayes v. Willis*, 11 Abb. Pr. N. S. (1871), 167; *Western Union Tel. Co. v. Union Pac. Railway Co.* (1880), 1 McCrary, U. S. C. Ct. 558; *Daly v. Smith*, 49 How. Pr. 150; *Fredericks v. Mayer*, 13 How. Pr. 566; *Clark's case*, 12 Amer. Dec. 213, note, 217; *Casey v. Holmes*, 10 Ala. 776; *Hamblin v. Dinneford*, 2 Edw. Ch. 529; *Sanguirico v. Benedetti*, 1 Barb. (N. Y.) 315; *Butler v. Galletto*, 21 How. 465; *DePol v. Sohlke*, 7 Rob. 280; *De Rivafinoli v. Corsetti*, 4 Paige, 270; *Ford v. Jermon*, 6 Phila. 6; *Port Clinton R. R. Co. v. Cleveland &c. R. R. Co.*, 13 Ohio St. 544; 3 Pom. Eq. Jur., §§ 1344; Pom. on Contr. §§ 24, 25, 310, 311; Anson on Contr. p. 413; *Hahn v. Concordia Society*, 42 Md. 460; Waterman on Spec. Perf., § 117, and notes; *Caswell v. Gibbs*, 33 Mich. 331; Kerr on Inj. *503; Hilliard on Inj. pp. 485-6; *Manhattan &c. Co. v. New Jersey &c. Co.*, 23 N. J. Eq. 161.

6. There seems to be one feature about the present contract, however, which renders it impracticable to be specifically enforced with justice to both parties. This is its want of mutuality, both of the obligation, and of the remedy as to one of its features. From the averments of the bill it is made to appear, that the contract in question is to remain in force only so long as the complainant shall continue to act as agent and correspondent of the Associated Press at Birmingham. It is not shown whether this duty was assumed for- ever, for any definite period, or might terminate at will. In either contingency, we are unable to see how the court is to compel performance on the part of the complainant.

The general rule, to which it is true there are many exceptions, seems to be, that contracts, in order to be enforced by specific performance, must be mutual in obligation, as well as in remedy. Mr. Pomeroy says, and such we think is the general rule, that " it is a familiar doctrine, that if the right to the specific performance of a contract exists at all, it must be mutual; the remedy must be alike attainable by both parties to the agreement."—Pomeroy on Contracts, §§ 162-165.

With some established exceptions, it may be stated that equity will decline to enforce a contract against a defendant, where the case is of such a nature that the court has no power to compel the complainant to perform his part of it. *Moon v. Crowder*, 72 Ala. 79; *Irwin v. Bailey, Ib.* 467; 3 Brick. Dig. p. 361, §§ 421, 422; Fry on Spec. Perf. 286; *Cooper v. Pena*, 21 Cal. 404; *Duvall v. Meyers*, 2 Md. Ch. 401; *Richmond v. Dubuque &c. R. R. Co.*, 33 Iowa, 423; *Marble Co. v. Ripley*, 10 Wall. 359; *Meason v. Kaine*, 63 Penn. St. 335; *Rogers v. Saunders*, 10 Me. 92; s. c., 33 Amer. Dec. 635. There are many unilateral contracts, which constitute an exception to this rule, including the right to exercise certain options, and cases affected by the statute of frauds, to say nothing of others, which stand on peculiar principles. This case is not of that class.—*Richards v. Green*, 23 N. J. Eq. 536; *Heflin v. Milton*, 69 Ala. 354; Pomeroy on Contr., §§ 167-174; 2 Lead. Cases Eq. p. 1077.

How, it may be asked, is it practicable for the court to compel the complainant to perform personal services, as agent and correspondent of the Associated Press at Birmingham, which it has contracted to perform from year to year, under this agreement? We have seen that the duty involves the exercise of special skill, judgment and discretion, being intellectual as well as mechanical in its character. These duties are also continuous in their nature, and of indefinite duration. There can be, as we have shown, no specific performance *affirmatively* of such duties by a court of equity. The most that can be done is to *negatively* enforce them by injunction prohibiting their breach, and this only on bill filed praying such particular relief.

It is clear that but one of two decrees can be rendered in this case: (1) we can tie the hands of the Associated Press, and the other defendants by injunction, forbidding the delivery of the press dispatches to any one else than the complainant, as prayed for, and leave the complainant free to terminate the contract at its will without limitation of time or circumstance, or to perform its duties as correspondent as negligently or diligently as discretion may dictate; or (2) to keep the injunction in force so long as the duties imposed by the contract shall be faithfully performed by complainant, which may be for all time to come, in view of the possible perpetuity of complainant's corporate existence. The first decree suggested, would be entirely opposed to all equity precedents and practice; the settled rule being, that the

[Iron Age Publishing Co. v. Western Union Telegraph Co.]

courts will not interfere by injunction in cases of this kind, if indeed in any case, where defendant can not be made secure in his rights and remedies for violation of the duties imposed on the complainant by the contract sought to be enforced. *Bromley v. Jeffries*, 2 Vern. 415; *Richmond v. Dubuque &c. R. R. Co.*, 33 Iowa, 422, and cases cited on p. 486.

The second decree above suggested would also be impracticable, not only for the reason that the court can not compel the performance of the personal services assumed to be undertaken by the complainant, involving as they do the exercise of special skill, judgment and discretion, but it would be out of the question for the court to keep this case open for all time, or even for an indefinite term of years, to superintend the continuous performance of these duties by the complainant. This might involve the frequent necessity on the part of the court of hearing complaints from the defendant, charging the complainant with a breach of its duties, or from the complainant, arraigning the defendant for contempt for a violation of the injunction. There would thus be no end to the number of occasions when the court might be called on, from year to year, to say whether the complainant has performed the duties in question faithfully and efficiently, so as to have kept the injunction in force, or negligently and unskillfully, so as to justify its breach. For these reasons, the rule is, that "equity will not enforce the performance of continuous duties involving personal labor and care of a particular kind which the court can not superintend."—Waterman on Spec. Perf., § 49; *Richmond v. Dubuque &c. R. R. Co.*, 33 Iowa, 422; *Caswell v. Gibbs*, 33 Mich. 331; *Port Clinton R. R. Co. v. Cleveland R. R. Co.*, 13 Ohio St. 544; *Atlanta &c R. R. Co. v. Speer*, 32 Ga. 550; *Blanchard v. Detroit R. R. Co.*, 31 Mich. 43; *Marble Co. v. Ripley*, 10 Wall. 339.

The contract being one which can not be specifically enforced in a court of equity against the complainant, we deem it inequitable to enforce it against the defendants.

The demurrer to the bill was properly sustained, and the decree is affirmed.