[COPYRIGHT, 1899, BY CARL G. JAHN.]

VOL. 6—*8

---

(Superior Court of Cincinnati.)
Special Term.
GUS. HILL v. M. C. ANDERSON.

The plaintiff was the owner and manager of a theatrical company, which was engaged in giving performances of a play entitled "McFadden's Flats"; and in February, 1898, he entered into a contract with the defendant, who was the lessee of a theatre, to play the piece at his theatre for the week beginning November 14, 1898, the defendant to furnish the theatre, well-cleaned, warmed and lighted, and also to furnish ushers, ticket sellers, etc., etc. The defendant refused to comply with his terms of the contract, and the plaintiff sought to enjoin the defendant from allowing any other theatrical performance to be given in his theatre during the week beginning November 14th. The contract contained no negative covenant as to either of the contracting parties.

Held: That the injunction sought was for the purpose of indirectly compelling a specific performance of the contract, and that, as the element of mutuality of remedy was lacking, the contract could not be specifically enforced, and the injunction, which was a means to be used to bring about such enforcement, could not be granted.

SMITH, J.

The plaintiff states that he is the owner of a first-class show, entitled "McFadden's Flats," and has in his employ a competent company, possessed of the proper wardrobe, music, scenery and advertisements; that said show is a traveling combination, giving exhibitions upon what is known as sharing terms, the plaintiff furnishing all the company and proper wardrobe, music, scenery and advertisements, and the proprietor of the theatre furnishing the theatre, well-cleaned, lighted and heated, together with stage hands, janitors, ticket sellers, etc., the gross receipts being divided equally between the plaintiff and the proprietor of the theatre.

That the defendant is the proprietor of the "Walnut Street Theatre," in Cincinnati, and that on the 16th day of February, 1889, he entered into a contract with the plaintiff, upon the terms above referred to, by which it was agreed that the plaintiff was "to play his attraction" of "McFadden's Flats" at the Walnut Street Theatre for the week commencing November 14th, 1898; but that, notwithstanding such contract, the defendant has refused to carry out his terms of the contract.

Wherefore, plaintiff prays that said defendant, M. C. Anderson, be enjoined from advertising or permitting the appearance or performance of any other attraction at said Walnut Street Theatre during said week, commencing November 14th, 1898.

The defendant admits the execution of the contract and admits that he refuses to comply with its terms, and that he has made a similar contract with the Primrose and Dockstader Minstrels, and has sold many hundreds of tickets for the performance to be given by said minstrels.

The defendant, as an excuse for his action, contends that by the terms of the contract he had the right to rescind the contract whenever he chose to do so, and that the entertainment furnished by the plaintiff is of an inferior kind, not suitable to his theatre.

In my opinion the defendant has failed to establish either of these defenses, and I am therefore brought to the consideration of the questions: 1st, whether the petition states facts which entitle the plaintiff to the equitable interference of the court by injunction; and 2d. if so, whether the plaintiff has so long delayed his application for such relief that he is guilty of laches.

The case was heard and argued before me yesterday, and the interests of both parties require that it should be promptly decided.

The proposition upon which the plaintiff bases his claim for an injunction is that where a person enters into a contract to do a thing which necessarily implies an obligation to refrain from doing some other thing, that a court of equity will enjoin such person from the doing of the other thing, provided that an action at law will not furnish adequate damages for the breach of the contract; the policy of the court of equity in issuing the writ of injunction being to prevent the one intending to commit a breach of the contract from profiting by such breach, and thus indirectly to force him to an observance of the contract.

The leading case in support of this proposition is that of Lumley v. Wagner, 1 De Gex, M. & G., 604, in which the defendant was Madame Wagner, a celebrated singer, who had contracted to sing for a certain period at the theatre of plaintiff, and not to sing during such period of time at any other theatre. The court restrained her from the threatened breach of the negative covenant upon the ground that the element of personal and artistic skill rendered the damages at law uncertain and conjectural.

The English courts, however, have had great difficulty in bringing the principle of this case into harmony with the general principles upon which courts of equity act in cases of contracts, and in Westwood Chemical Company v. Hardman, Law Reports, 2 Ch. (1891,) 416, Lord Justice Lindley said:

"I agree with what the late Master of the Rolls, Sir G. Jessel, said about there being no very definite line; I agree also at what Lord Justice Fry has said more than once, that cases

of this kind are not to be extended. I confess I look upon Lumley v. Wagner rather as an anomaly to be followed in cases like it, but an anomaly which it would be very dangerous to extend. I made that observation for this reason, that I think the court, looking at the matter broadly, will generally do much more harm by attempting to decree specific performance in cases of personal service than by leaving them alone; and whether it is attempted to enforce these contracts directly by a deree of specific performance or indirectly by an injunction appears to me to be immaterial.''

And in Davis v. Foreman, Law Reports, 3 Ch. (1894), 654, Justice Kekewith declared that ''the court has declined to extend the principle of Lumley v. Wagner.''

The difficulty of extending the principle of Lumley v. Wagner to contracts generally is stated by that master of the law of chancery, Sir George Jessel, in Fothergill v. Rowland, Law Reports, 17 Equity Cases 132, in which an effort was made to enjoin the defendants, who had contracted to deliver coal from their colliery to the plaintiffs, from delivering coal to anyone else. Sir George Jessel said:

''Then it is said, assuming this contract to be one which the court can not specifically perform, it is yet a case in which the court will restrain the defendants from breaking the contract. But I have always felt when at the bar a very considerable difficulty in understanding the court on the one hand professing to refuse specific performance because it is difficult to enforce it, and yet on the other hand attempting to do the same thing by a round-about method. If it is right to prevent the defendant, Rowland, from selling coal at all—he not having stipulated not to sell coal, but having stipulated to sell all the coal he can raise to somebody who has promised valuable consideration—why is it not right to compel him to raise it and deliver it? It is difficult to follow the distinction, but I can not find any distinct line laid down or any distinct limit which I could seize up-

on and define as being the line dividing the two classes of cases—that is, the class of cases in which the court, feeling that it has not the power to compel specific performance, grants an injunction to restrain the breach by the contracting party of one or more of the stipulations of the contract, and the class of cases in which it refuses to interfere. I have asked (and I am sure I should have obtained from one or more of the learned counsels engaged in the case every assistance) for a definition. I have not only not been able to obtain the answer, but I have obtained that which altogether commands my assent, namely, that there is no such distinct line to be found in the authorities. If I am referred to vague and general propositions—that the rule is that the court is to find out what it considers convenient or what will be a case of sufficient importance to authorize the interference of the court at all, or something of that kind.''

It is true that in Donnell v. Bennett, Law Reports, 22 Ch., 835, a case decided subsequently to Fothergill v. Rowland, in which the defendant had agreed to furnish complainant all the fish not used by him, and not to sell to any one else, Mr. Justice Fry issued an injunction. In this case the contract contained a negative stipulation not to sell to any one else; and in basing the decision upon this negative stipulation, the court said:

''I have come to the conclusion, therefore, upon the authorities which are binding upon me, that I ought to grant this injunction. I do so with considerable difficulty, because I find it hard to draw any substantial or tangible distinction between a contract containing an express negative stipulation and a contract containing an affirmative stipulation which implies a negative. I find it exceedingly difficult to draw any rational distinction between the case of Fothergill v. Rowland and the case now before me. But, at the same time, the courts have laid down that, so far as the decisions have already gone in favor of granting injunctions, the injunction is to go.''

From this unsatisfactory state of

the English authorities on this question one turns to the American authorities, only to find them hopelessly in conflict and irreconcilable. I have not had time to examine all of them, nor time to collate them for the purpose of presenting the different doctrines they declare. It is sufficient for the purposes of this case to inquire and determine, in this chaotic condition of the authorities, what principle the supreme court of Ohio has declared will govern it in the decision of this class of cases, and then to follow it, as is the duty of a lower court.

In Steinau v. Gas Company, 48 Ohio St., 330, the contract between Steinau and the Gas Company was that—

"In consideration of the continued use of not less than three-fourths of the present average consumption of gas by Steinau the company stipulated that it would furnish him, for ten years, all the gas necesary for the lighting of his place of business at a price much lower than the then regular price, to be paid monthly. Steinau stipulated to receive the gas in quantity not less than three-fourths of the then average monthly consumption for the time named, and further stipulated not to introduce or use electric lights or material for general illuminating purposes other than gas to be furnished by the company.

"No past consideration appeared. The obligations of each party were wholly in covenant and were wholly executory."

The prayer was for an injunction to restrain Steinau from using the electric light, or any material for general illuminating purposes other than the gas to be furnished by the company.

The circuit court sustained an injunction against Steinau, but the supreme court reversed the judgment. In the course of its opinion it said:

"Injunction is frequently resorted to as a means of obtaining specific performance. In this case the purpose intended is to prevent the use of electric lights in order that Steinau 1 shall thus be compelled to comply with his contract and use the company's gas. The object thus sought is specific performance.

"Against the demand of the company it is insisted that a court of equity will not grant an injunction to restrain a breach of negative covenants where the result will be to effect specific performance of affirmative covenants unless the affirmative stipulations of the complaining party can be specifically enforced against him.

"As already stated, the object of the proceeding is, and the result reached, if it is successful, will be to specifically enforce the contract as against Steinau. It seems plain that if the situation of the parties were reversed and specific performance were sought against the company, the court would have no power to compel a full compliance by the company with its stipulations to furnish all the gas needed for the period provided for in the contract. * * * How can the court order the company to continue the manufacture of gas for the purpose of supplying this consumer? How can it prevent this company from dissolving and going out of business, or from selling out to another which would not be bound by its personal contracts? The inquiry, then, is, if the contract could not be specifically enforced against the company, may it be specifically enforced in its favor?"

The authorities on the point are numerous, and to some extent conflicting. Mr. Pomeroy, in his work on contracts, section 163, observes:

"The peculiarly distinctive feature of the equitable doctrine is that the remedial right to specific performance must be mutual. If, therefore, from the nature of the contract itself, from the relations of the parties, from the personal incapacity of one of them, or from any other cause, the agreement devolves no obligation at all upon one of the parties, or if it can not be specifically enforced against him, then and for that reason he is not in general entitled to the remedy of a specific performance against his adversary party, although otherwise there may be no obstacle arising, either from the terms of the contract or from his personal status and relations to an enforcement of the relief against the latter individually."

Again, in section 165, he says that: "It is a familiar doctrine that if the right to the specific performance of a contract exists at all, it must be mutual; the remedy must be alike attainable by both parties to the agreement."

While recognizing that there are authorities opposed to this position of Pomeroy, the supreme court sums up its conclusion by the statement that:

"However, after a somewhat careful examination of the numerous cases cited by counsel, and many others, we are inclined to the conclusion that the general doctrine laid down by Mr. Pomeroy is sustained by the apparent weight of authority. Hills v. Croll, 2 Phillips, 60; Fothergill v. Rowland, L. R., 17 Eq., 132; Bailey v. Collins, 59 N. H., 459; Pingle v. Conner, 66 Mich., 187; Publishing Co. v. Tel. Co., 83 Ala., 498; Palace Car Co. v. Railway Co., 4 Wood's C. C. R., 317; Meason v. Kaine, 63 Pa. St., 335; Tyson v. Watts, 1 Md. Chy., 13; Richmond v. Ry. Co., 33 Iowa, 422."

Whether the supreme court intends to apply this same principle in a case where the complainant has fully executed all terms of the contract obligatory upon him is a question that was not presented by the case of Steinau v. the Gas Co., and therefore may be said to be still unsettled in this state.

Immediately following the citations from Pomeroy, which the supreme court adopts as declaring the principle which should govern it in granting injunctions to enforce specific performance, the court says:

"To this general rule the courts have made an exception where peculiar skill and labor are involved, and this, apparently, upon the ground that the element of personal and artistic skill renders the chances of damages at law uncertain and conjectural. Of this class the case of Lumley v. Wagner, 1 De Gex. M. & G., 604, is, perhaps, the leading case."

If, as contended in this case, the actor has the right to enjoin the proprietor of the theatre from allowing his theatre to be used during the period covered by the contract, just as the proprietor of the theatre has the right to enjoin the actor from acting in any other theatre during such period, then it would be difficult to understand the statement of our supreme court that the class of cases illustrated by Lumley v. Wagner is an exception to the rule that the remedy by injunction will only be granted when such remedy is mutual; because in such case the parties would have a mutual remedy. The true construction of this language seems to me to be a recognition by the court of the principle that the actor has no remedy by injunction such as the proprietor of the theatre has, and therefore this class of cases is an exception to the general rule.

In Iron Age Publishing Company v. Western Union Telegraph Company, 83 Ala., 498, in which the supreme court of Alabama declared that the mere right of the defendant to such an injunction as is granted in the class of cases illustrated by Lumley v. Wagner did not entitle the plaintiff to an injunction against the defendant. In that case the court said:

"Mr. Pomeroy says, and such we think is the general rule, that it is a familiar doctrine that if the right to the specific performance of a contract exists at all, it must be mutual; the remedy must be alike attainable by both parties to the agreement.' * * * How, it may be asked, is it practicable for the court to compel the complainant to perform personal services as agent and correspondent of the associated press at Birmingham, which it has contracted to perform from year to year under this agreement? We have seen that the duty involves the exercise of special skill, judgment and discretion, being intellectual as well as mechanical in its character. These duties are also continuous in their nature, and of indefinite duration. There can be, as we have shown, no specific performance affirmatively of such duties by a court of equity. The most that can be done is to negatively enforce them by injunction, prohibiting their breach and this only on bill filed praying such particular relief."

But we are not without direct authority in a case almost identical to the one at bar. In Welte v. Jacobs, 171 Ill., 625, Welte was the manager of a company which was engaged in playing "The Black Crook."

He entered into a contract with Jacobs, proprietor of the Alhambra Theatre in Chicago, to play his company for the week beginning December 29, 1895, Jacobs contracting to furnish the theatre, well-cleaned, lighted and heated, together with stage carpenters, ushers, ticket sellers, orchestra, etc., and Welte was to furnish a first-class company. Jacobs refused to perform his part of the contract, and Welte filed a bill in equity, in which he sought to enjoin Jacobs from letting the theatre to any one else, and in this way indirectly to compel him to perform his contract, because it was conceded that the court could not specifically or otherwise enforce the part of the contract which required Jacobs to furnish the usual and necessary light, heat, music, stagehands, etc.

In refusing the injunction sought the court held that there was a want of mutuality of remedy, and that therefore it could not grant the relief prayed. The court said: "Strictly speaking, the bill was not one for specific performance, but for injunction only It is clear from the allegations of the bill and from the authorities bearing upon the question, that specific performance of the contract could not be decreed. It is not and can not be contended that Welte could have been compelled by any writ the court could have issued, to occupy the theatre with his company of actors and give the performances contracted for, any more than a public singer or speaker can be compelled specifically to perform his contract to sing or speak. Negative covenants not to sing or perform elsewhere at a certain time than a designated place have been enforced by the injunctive process, but further than this such contracts have not been specifically enforced by the courts by injunction or otherwise. (Lumely v. Wagner, 1 De G., M. & G., 604; Daly v. Smith, 38

N. Y. Sup., 158). In Lumley v. Wagner there was an express covenant not to sing elsewhere than at the complainant's theatre, and the injunction was placed on that ground.

"But it is urged that negative covenants may be implied as well as expressed, and when necessarily implied from the terms of the contract they will be enforced in like manner (citing cases). While there was a negative covenant in the contract under consideration against Welte it is not important to consider whether or not Welte might have been enjoined from performing elsewhere than at Jacobs' theatre at the time in question, for it is manifest he could not have been compelled to perform at said theatre. Before a contract will be specifically enforced there must be mutuality in the contract, so that it may be enforced by either, and as this contract was of such a nature that it could not have been specifically enforced by Jacobs, it should not be so enforced by Welte. Lancaster v. Roberts, 144 Ill., 213; Fry on Specific Performance, secs. 440, 441; Waterman on Specific Performance, sec. 196; Cooper v. Pena, 21 Cal., 411."

The court subsequently refers to the rule laid down by Pomeroy on Contracts.

The present case is not as strong a case in favor of the plaintiff as was the case of Welte v. Jacobs, because in this case the contract contains no negative covenant.

The decision in the case of Welte v. Jacobs is the logical result of the principle declared by our supreme court in Steinau v. The Gas Company, and is therefore controlling in the case at bar.

I am aware that the conclusion I have reached in this case is in direct conflict with the conclusion reached by a former judge of this court in a similar case viz., Lacy v. Heuck, 12 W. L. B., 200). I entertain the highest respect for the learned judge who delivered the opinion in that case and give the greatest consideration to any conclusion he may have reached in a case. At the time the decision in Lacy v. Heuck was rendered, however,

neither the case of Welte v. Jacobs nor that of Steinau v. the Gas Company had been decided, and the court therefore did not have the benefit of the reasoning of those authorities, nor was it obliged, as I now feel myself obliged, to follow the principle declared in Steinau v. The Gas Company.

For the reasons above given the petition of plaintiff is dismissed and the relief prayed for denied. Under the circumstances, however, I think the costs should be equally divided.

Rankin D. Jones, for Plaintiff.

Thomas F. Shay, for Defendant.