*1835.*

HAMBLIN
*v.*
DINNEFORD.

---

HAMBLIN *v.* DINNEFORD and another.

---

Contracts for personal services are matters for courts of law ; and equity will not compel specific performance.

An actor agreed in writing with a manager not to perform at any other theatre for a term of years. He broke his engagement ; and a bill was filed to restrain him by injunction and to compel performance. *Held*, that it was a mere matter between employer and employed, and the remedy was at law. A preliminary injunction which had been granted was dissolved.

---

The complainant, Thomas S. Hamblin, was the lessee and manager of the Bowery Theatre in the city of New York. He had entered into an agreement for the services of the defendant David S. Ingersoll as a comedian, which was reduced into writing and whereby the said Ingersoll engaged himself to the complainant for the term of three years ; and covenanted and agreed to perform and enact for three years all such parts of the drama which the complainant should require either in the city of New York or any other city in the United States or the Canadas ; and the said David S. Ingersoll was not, during the said term, to be at liberty to play at any theatre or for any person or persons benefit without the consent of the complainant his executors, administrators or representatives first had and obtained for such purpose in writing. In consideration of all this, the complainant bound himself to pay the said Ingersoll for the first year fifteen dollars per week, for the second year twenty dollars a week, and for the third year twenty-five dollars per week, together with a clear third of two benefits in each year.

The bill set forth this agreement ; and alleged that the defendant Ingersoll entered upon and commenced his en-

*November 9,*
*1835.*

*Contracts*
*for personal*
*services.*
*Theatre.*
*Manager and*
*actor.*

gagement under it. It went on to show that the other de-fendant, William Dinneford, had opened a theatre called the Franklin Theatre, New York; and although he well knew and was notified of the said agreement which the said David S. Ingersoll had entered into with the said complainant, yet he, the said Dinneford, had agreed and the said Ingersoll had engaged for the performance of the said Ingersoll at the said Franklin Theatre without the consent of the complain-ant; and the said Ingersoll had left the theatre and employ-ment of the complainant. Prayer: that the said William Dinneford and David S. Ingersoll might be restrained from playing or appearing or performing as an actor at the Franklin Theatre or at any other theatre during the period of his said engagement with the complainant, without his written consent; and that the said William Dinneford his agents and servants might be restrained from permitting or suffering the said David S. Ingersoll to perform at the said Franklin Theatre until the further order of the court. And for further relief.

The defendant, Ingersoll, in his answer, admitted the making the agreement, but alleged his being a minor at the time he signed it; and he considered himself at liberty to make an engagement with the defendant, Dinneford, on the ground of the complainant, having withheld a part of his salary. While Dinneford, in his answer, denied knowledge of Ingersoll's agreement with the complainant.

A preliminary injunction had been granted; and a motion was now made to dissolve it.

Mr. *T. S. Brady,* for the defendant Ingersoll; and Mr. *T. J. Smith,* for the defendant Dinneford.

Mr. *C. W. Sandford,* for the complainant.

*Novemb.* 10.    THE VICE-CHANCELLOR :—The most important question for the court is, as to its jurisdiction in this case.

The bill is in the nature of one for a specific performance. It seeks, by its prayer, to compel performance at the theatre embraced by the agreement.

When the injunction was applied for, I had some hesita-

tion whether the court should not leave the parties to law: for, in general, matters of personal services are matters for law. There may be some special exception; and there are cases where a party is restrained in breaches of covenant: but then they are such as relate to property of some kind; and not where personal services are sought to be compelled. Thus, in *Barfield* v. *Nicholson*, 2 S. & S. 1, a work entitled "The Architectural Dictionary" had been pirated by the defendants in a book called "The Practical Builder." An injunction had been granted by the Vice-Chancellor to restrain the publication, contrary to a covenant; and it was sustained upon an appeal to the Lord Chancellor.

1835.

HAMBLIN
v.
DINNEFORD.

The case of *Barret* v. *Blagrave*, 5 Ves. 555, has been cited. There, the house of the defendants adjoined Vauxhall gardens. It had been originally let by Tyers and Barret, the proprietors of the garden, under an express covenant from the lessee not to carry on the trade of a victualler, retailer of wine or any employment which would be to the damage of the proprietors of Vauxhall gardens, upon the penalty of forfeiting the lease and fifty pounds a month. The lessees underlet to the defendant, who had become insane; but his wife kept the house open during the season for the gardens as a house of public entertainment, where liquors and refreshments were supplied. The court granted an injunction. In that case, it will-be observed, the covenant related to the gardens, and to the use to be made of the demised premises—and was not a matter involving the consideration made of personal services to be performed. *Adderly* v. *Dixon*, 1 Sim. & Stu. 608, contains the principle upon which this court decrees specific performance of contracts for land and sometimes in relation to matters of a personal nature; but it has no particular application to this case.

There is, however, a case, and upon the strength of which I was induced to grant the injunction in the first instance, which would seem to be in point: *Morris* v. *Colman*, 18 Ves. 437—more fully adverted to by Lord Eldon, in *Clarke* v. *Price*, 2 Wilson, 157. As reported in Vesey, the court seems to have interfered on the ground of partnership. Mr.

Colman was the acting manager of the Haymarket Theatre. An injunction had been granted restraining him from acting as manager ; and a reference was directed to ascertain whether he had performed the duties of manager.   Upon a motion to dissolve the injunction, a question arose upon the validity of a clause in the articles restraining him from writing dramatic pieces for any other theatre.   And the court deemed the agreement in that particular legal.   But we have a somewhat different version of the case in *Clarke* v. *Price*.   And here it may be as well to revert to this case of *Clarke* v. *Price*.   The defendant, Mr. Price, had agreed to furnish the complainants, who were publishers, with reports of cases argued and determined in the court of exchequer. When about four volumes were out, Mr. Price made some contract with the other defendants, Brooke and Sweet, by which he had bound himself to write and compose new volumes of reports of cases in the court of Exchequer and in the exchequer chamber ; and the complainants insisted that they were entitled to have an assignment duly made to them of all the copyright.   Bill for specific performance ; and, an injunction.   The case of *Morris* v. *Colman*, had been referred to ; and the Lord Chancellor thus spoke of it : " The case of *Morris* v. *Colman* is essentially different from the present.   In that case, Morris, Colman, and other persons, were engaged in a partnership in the Haymarket Theatre, which was to have continuance for a very long period, as long indeed as the theatre should exist.   Colman had entered into an agreement which I was very unwilling to enforce ; not that he would write for the Haymarket Theatre, but that he would not write for any other theatre.   It appeared to me, that the court could enforce that agreement by restraining him from writing for any other theatre.   The court could not compel him to write for the Haymarket Theatre ; but it did the only thing in its power ; it induced him indirectly to do one thing, by prohibiting him from doing another.   There was an express covenant on his part contained in the articles of partnership and there was a decree directing the partnership to be carried on ; it could not be put an end to, and it was the duty of the parties to interfere." But with respect to the principal case of *Clarke* v. *Price*, he ob-

serves, that if the contract is one which the court will not carry into execution, the court cannot indirectly enforce it by restraining Mr. Price from doing some other act. This is an agreement which expressly provides that Mr. Price shall write and compose reports of cases to be published by the plaintiffs. But I have no jurisdiction to compel Mr. Price to write reports for the plaintiffs. I cannot, as in the other case, say, that I will induce him to write for the plaintiffs, by preventing him from writing for any other person, for that is not the nature of the agreement. The only means of enforcing the execution of this agreement would be to make an order compelling Mr. Price to write reports for the plaintiffs; which I have not the means of doing. If there be any remedy in this case, it is at law. If I cannot compel Mr. Price to remain in the Court of Exchequer for the purpose of taking notes, I can do nothing. I cannot, indirectly, and for the purpose of compelling him to perform the agreement, compel him to do something which is merely incidental to the agreement. It is also quite clear, that there is no mutuality in this agreement." He was, therefore, of opinion the court had no jurisdiction in the case. The difference in the two cases is here seen. In the one, Colman agreed not to write for any other theatre, not however that he would write for the Haymarket. While, in *Clarke* v. *Price,* the latter agreed to write reports for the complainants, but had not restrained himself by a covenant from writing for any one else. In the case now before the court, the covenant of Mr. Ingersoll is both ways, that he will perform at the complainant's theatre, and will not perform at any other; and so far, it might be thought to be within *Morris* v. *Colman,* to warrant the preliminary injunction. But the difficulty is, how to compel specific performance. The court cannot oblige Mr. Ingersoll to go to the Bowery Theatre and there perform particular characters. Imprisonment for a contempt would be the consequence of his refusal, and this would defeat the very performance sought to be enforced. Chancellor Walworth refers to this sort of thing in the case relative to the Italian opera (*De Rivafinoli* v. *Rossetti,* 4 Paige's C. R. 264;) and treats the subject as it deserves. The court can make no such

1835.

HAMBLIN
*v*
DINNEFORD.

**1835.**

**HAMBLIN**
**v.**
**DINNEFORD.**

order. The only relief it could give would be to restrain this actor from performing elsewhere than at the Bowery Theatre, but this would leave the positive part of the agreement untouched. As I have before observed, the case is, in truth, different from *Morris* v. *Colman*. There, was a copartnership; and if that had not appeared, the court could not have entertained jurisdiction. Not so here. This is a mere matter between employer and employed. The parties must be left to law.

The injunction must be dissolved; and if this is to be the case as to Ingersoll, it must also be dissolved as to the defendant Dinneford. Let it be without prejudice to the rights of all parties at law. Costs may abide the event of the suit.

---

*Note.* Since the foregoing opinion was delivered, the case of *Kemble* v. *Kean* has appeared in the Reports, (6 Simon 333.) There the defendant had agreed with the proprietors of Covent-Garden Theatre to act for twenty-four nights during a certain period of time at their theatre at a salary of £50 for each night, and that he would not perform at any other theatre in London during the period of his engagement. Upon a bill filed for a specific performance, an injunction *ex parte* was granted, restraining the defendant from acting at Drury-lane or any other place in London. A motion was afterwards made to dissolve it, when, upon a review of the cases of *Morris* v. *Colman* and *Clarke* v. *Price*, it was held, that the court could not enforce the positive part of the contract, and therefore it would not restrain, by injunction, a breach of the negative part. In *Kimberly* v. *Jennings*, Ib. 340, the court proceeded on the same principle and allowed a demurrer to the bill.