J. F. Daly, J. [After stating the facts.]
The most serious question presented on the facts is as to the right of the plaintiff to equitable relief, restraining defendant from performing at any other theater than the plaintiff’s; in other words, the right of plaintiff to enforce in equity the negative contract of defendant which follows his contract for personal services. The affirmative contract, viz: to perform, could not be specifically enforced, and plaintiff does not ask that it should be. Contracts (for personal service) of a negative character have been enforced in particular cases where the subject matter is particularly the province of courts of equity, as in a partnership where one partner in a theater agreed with his copartners that he would not write dramatic pieces for any other theater. In that case, the court enjoined the defendant from writing for any other theater (Morris v. Coleman, 18 Ves., 437). But the principal question in that case was, Whether the covenant was not void on grounds of public policy, as in cases of covenants on restraint of trade, because it was unlimited. The covenant was, however, upheld by Lord Eld ok, as one of mutual covenants between copartners. Sir Samuel Romilly, for the plaintiff on the argument, took the point *173 that it was “no more against public policy, than a stipulation by Garrick, not to perform at any other theater than that at which he was engaged, would have been.”
In a subsequent case in the English court of chancery (Kemble v. Kean, 6 Sim., 333), the vice-chancellor refused an injunction to prevent Mr. Kean acting at any other theater in London, until he had performed his engagement at Covent Garden Theater. The bill in that case not only prayed for such injunction, but also for affirmative relief, that defendant might be decreed specifically to perform his agreement with the plaintiffs. That agreement was, that “he would be ready on the commencement of the season of 1830-31, to return, when required, to his engagement, of which ten nights remained uncompleted; and that in the meantime, he was not to act in London.” The vice-chancellor remarked, that there was no time stated in the contract for the defendant to perform, and the thing was altogether so loose, that the court could not determine upon what scheme of things the defendant should perform his agreement; that there could be no prospective declaration or direction of the court as to the performance of the agreement; that there was no method of arriving at what was the substance of the contract by means of any process the court could issue ; that where the agreement is mainly and substantially of an active nature, and is so undetermined that it is impossible to have performance in that court, and it is only guarded by a negative provision, the court will leave the parties to a court of law.
In this State, the court of chancery refused to enforce a similar contract on a similar bill, praying for the like affirmative relief, and the enforcement of a negative covenant as part or incidental relief, because the court could not enforce the affirmative part of the contract, i. e , compel the actor to perform at a particular *174 theater, the Bowery, and, therefore, would not enforce his covenant not to play at any other theater, and, left the plaintiff to his remedy at law (Hamblin v. Dinneford, 2 Edw. Ch., 529). The same court, in a prior case, that of De Rivafinoli v. Corsetti(4 Paige Ch., 265), held, that where an opera singer had engaged to sing for eight months, commencing November
1, 1833, but before that time arrived, made an engagement to go to Havana and perform, and intended to violate his contract, the court would not interfere, because there had been no breach of the contract, the time not having arrived for defendant to perform for plaintiff when the action was brought, and there could be no breach until the engagement commenced.
In a subsequent case in the supreme court, where the plaintiff prayed for a specific performance of the defendant’s contract to sing, and for an injunction restraining a breach of his covenant not to make engagements with any other person, the court held, that it could not decree a specific performance, because it was impracticable (Sanquirico v. Benedetti, 1 Barb., 315). It appears to me, that the current of these decisions was to establish, 1. That where the affirmative part of the contract was indefinite as to time or place, so that no specific performance of the substance of the contract could, be decreed, the action must fail; and as the plaintiff could not have affirmative relief, the court would not enforce the defendant’s negative covenant.
2. That in a case where the active or affirmative contract was certain and definite, yet there was no process in equity to enforce it, and the plaintiff could not have the relief he prayed for, the court would not, in that action, enforce by injunction the negative covenant. 3. That in such cases, the plaintiff must be left to his remedy at law.
In the present action, the plaintiff does not seek in equity the enforcement of the defendant’s contract to *175 perform, but to enforce a definite contract not to perform at any other theatre. There is no doubt of the power of the court to enforce this covenant in the fullest manner. A decree that the defendant shall not perform at any other place than the Olympic Theater for the rest of the period of three months, during which his engagement continues, can be enforced by attachment effectually, and the plaintiff need not fail in Ms action for want of power of the court to decree, or of process to enforce, obedience to that judgment.
In a fit and proper case, I do not see why, under the Code, the court should refuse to take cognizance of an action in tMs form, and apply the remedy in its power.
The distinction between legal and equitable remedies was discontinued by the Code, adopted since the decisions above cited. There can be no question of jurisdiction such as defeated the plaintiff in. Kemble v. Kean, where the court of chancery would not interfere, because no partnership had been proved to sustain the demand of equitable relief, and give the court jurisdiction of the subject of the action. Whatever relief the facts in the complaint entitle the plaintiff to, may be granted, if the court has power to allow it, unless the relief is of more than one kind, and inconsistent.
In Morris ». Coleman, the court of chancery, having . jurisdiction because the parties were copartners, enforced the negative contract of defendant not to write for other theaters than that he had agreed to write for, by writ of injunction.
Under the Code, it has been held, that the power of the court to enjoin has been enlarged by the provisions of section 219 (Merritt v. Thompson, 3 E. D. Smith, 283).
I do not regard this action as presenting the features of the case of De Rivafinoli v. Corsetti (supra), because the defendant here, has already entered upon *176 his engagement for a definite period of three months, has partly performed it, and has not only given notice to plaintiffs of his intention to violate his agreement, but does not deny having made an agreement immediately to leave the State to play at another theater, in contravention of plaintiff’s rights. I think plaintiff should be allowed such aid as the court can give him, to enforce the defend ant’s plain agreement not to play elsewhere, and that a covenant of the nature made by the defendant and which, from the legal reports, seems to have been a customary one for many years in this country and in England, is not without the pale of equity cognizance.
It is indisputable, that when theatrical managers with large capital invested in their business, making contracts with performers of attractive talents, and relying upon such contracts to carry on the business of their theaters, are suddenly deserted by the performers in the middle of their season, the resort to actions at law for damages must fail to afford adequate compensation. It is not always that the manager is deprived of his means of carrying on his business, but that his performers, by carrying their services to other establishments, deprive him of the fruits of his diligence and enterprise, increase the rivalry against him, and cause him an injury. It is as much his right, if he have a • contract to that effect, that no other establishment shall have the services of his performers, as that he shall have them himself. There is no hardship to the actors in preventing the breach of the negative part of their contract, for every man has the right to expect to be held to his agreement when it was entered into without fraud, and he receives the consideration he demands, and his contract entitles him to.
This court has full power, under section 219 of the Code, to grant the relief demanded, viz: to restrain defendant from performing at any other theater during *177 the term of his engagement with the plaintiff, and can provide for it not only by decree, without any uncertainty as to time, place or substance, but can enforce it by attachment, to the very letter. The action need not fail for want of power to decree specific performance, as in the cases cited, for no decree as to the affirmative portions of the contract is demanded.
The defendant seems to have become dissatisfied with his engagement, because it required him to give a day performance which he had not anticipated; but his contract is broad enough to cover all that has been demanded of him, and he alleges no misrepresentations as to the work lie was to perform.
In respect of the amount of his compensation, it appears to have been fixed after several meetings between him and Kiralfy, and after various propositions on his part.
I regard his position as to his contract being made with Kiralfy personally, as untenable. He was expressly notified by the language of the latter, that he was acting: for the Olympic Theater, in making engagements, while the defendant was also informed that Kiralfy had no-authority to engage any one in his line; yet the contract was made, in the hope of its ratification by the plaintiff, and when he arrived in Hew York, this ratification was given, having the effect of original authority, and the defendant commenced the engagement under the plaintiff without objection.
The injunction should, therefore, be continued pendente lite.
The writ of ne exeat being issued in aid of the injunction, and being absolutely necessary to carry the order of the court into effect, the motion to set it aside must be denied.