PRATT *v.* MONTEGRIFFO.

(*Supreme Court, General Term, First Department.* June 6, 1890.)

</div>

1. INJUNCTION—VIOLATION OF CONTRACTS.
    Injunction will lie to restrain a singer of reputation from violating his contract with an opera company by singing under other employment or management during the period covered by the contract, where the moving papers allege, with a fair degree of probability to sustain the allegation, that defendant intends to identify himself with a rival organization.

2. CONTRACT—PERFORMANCE.
    Plaintiff, as manager of an opera troupe, engaged defendant, a tenor of repute, under an agreement stipulating that defendant should be as well advertised in programmes and newspapers as the other tenor. A performance was to be given at the city where defendant resided, and he was assured by plaintiff that he should take the part of tenor on the opening night, and defendant joined the company, and rendered services under that assurance. Defendant did sing on that occasion, but the other tenor was advertised and received the credit of the performance in the morning papers, the mistake being corrected in the afternoon papers. *Held*, this was such a violation of the agreement as absolved defendant from its further performance.

Appeal from special term, New York county.

Action by Charles H. Pratt, manager of the Emma Abbott Grand-Opera Company, against Agostino Montegriffo. Defendant appeals from an order continuing a preliminary injunction restraining him from violating his contract with plaintiff.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ. ·

*Hoadly, Lauterbach & Johnson,* (*William N. Cohen,* of counsel,) for appellant.    *Dunning & Fowler,* (*William F. Dunning* and *De Lancy Nicoll,* of counsel,) for respondent.

DANIELS, J.    The injunction herein restrained the defendant from singing or performing for any person or company other than the one under the supervision and direction of the plaintiff at any time, and from in any way publicly singing or performing on any stage, or in any operatic entertainment or concert, for any person or company other than the one under the management of the plaintiff; and it was in this manner allowed, under a contract entered into between the defendant and the plaintiff on the 6th of May, 1889, by which the defendant covenanted and agreed to sing and perform all parts which might be requested of him by the plaintiff for the "Abbott season" of the years 1889 and 1890.    And the season has been shown to include the period between the last of August and the end of the month of May.    And for the services which the defendant agreed to perform he was to be paid the salary of $130 per week on the regular salary day.    The defendant also covenanted and agreed that during the continuance of the agreement he would not sing or perform under any other management, nor allow his name to be advertised to do so, without having first obtained the written consent of the plaintiff. And it was further agreed by the defendant to give the plaintiff the right to engage his services for the season of 1890 and 1891 on the same terms, provided notice should be given to him by the plaintiff before the close of the season of 1889 and 1890 that his services would be so required.    And by an affidavit made by the defendant he has stated that the plaintiff exercised the option for the next year, contained in this contract, about the 1st of the month of March, 1890, and the plaintiff in his own affidavit states the same fact, although it does not appear that notice of the election to continue the contract through the next season was given to the defendant in writing.    Still, as the season does not close until the end of the present month, there is ample time remaining for the service of notice in that manner.    The defendant entered into the service of the plaintiff as manager of the opera troupe under his control, and continued in that service until the 24th of February, 1890; and then he left it at the city of Washington, and has performed no services for the plaintiff since that time, but refuses to continue in his employment.

Objection has been taken that these facts are not sufficient to entitle the plaintiff to the injunction which has been issued, and the cases of *Hamblin* v. *Dinneford,* 2 Edw. Ch. 529, and *Sanquirico* v. *Benedetti,* 1 Barb. 315, appear to support this objection.    And other authorities are contained in the books maintaining the same conclusion, and that was the early tendency of the courts both in England and in this country.    But since those decisions were made the subject has received more deliberate consideration, and the inclination of the courts now appears to be in a decidedly different direction, and the reason of the case supports this inclination.    For, while the party cannot be obliged to perform the contract he has entered into by performing the services he has agreed to render, he may yet be restrained from entering the employment of a rival company, and rendering services to that company, to the injury and detriment of his employer under the contract; and the only remedy to prevent that is an injunction.    It is entirely clear that the law can afford no redress by way of damages for the injury which the party entitled to the benefit of the agreement may sustain by the other party's identifying himself with a rival enterprise, and in that manner diminishing the patronage and profit of the party entitled to the services under the agreement.    The only adequate remedy is to prevent the wrong, and that can be no otherwise administered than by an injunction.    The defendant is shown to be a person of superior abilities and acquirements in his pursuit of a tenor singer, and his ad-

dition to an operatic troupe as one of its members would not fail to be an attraction to the public, and a source of profit to the manager in whose employment he should render his services. And it has been alleged in support of the action that the diversion which would follow the attachment of the defendant to a rival organization would be productive of irreparable loss to the plaintiff. And, while the allegations upon this subject are by no means extended, yet it can be reasonably seen that this conclusion is well supported by the facts, and the case accordingly does present the right to an injunction under the rules which have been made applicable to the issuing of that order. By section 603 of the Code of Civil Procedure an injunction has been permitted to be issued where it appears from the complaint that the plaintiff demands and is entitled to a judgment against the defendant restraining the commission or continuance of an act which, during the pendency of the action, would produce injury to the plaintiff. And it has been alleged, with a fair degree of probability to sustain the allegation, that the defendant does intend to identify himself with an organization mentioned as a rival of that under the management of the plaintiff, which would not fail to be productive of loss and injury to him. And the authorities in which the reason and foundation of this principle have been considered sustain the right to make use of an injunction to prevent that act. In *De Rivafinoli* v. *Corsetti*, 4 Paige, 264, the object of the action was to oblige the defendant to perform a contract, entered into by him with the plaintiff, for singing, gesticulating, and reciting in the capacity of *prima-basso* in operatic and other performances; but, while the court held itself unable to enforce a specific performance of the agreement, it was not held that the defendant could not be restrained by injunction from identifying himself during the period of his contract with another organization. On the contrary, the tenor of the decision tends to support this right to an injunction; but the action there entirely failed on account of the fact that it was prematurely commenced. In *Fredricks* v. *Mayer*, 13 How. Pr. 566, this subject was still more fully examined, and the authorities upon it collected and considered, and, as the modern authorities indicated the law to be, they were regarded as justifying an injunction to prevent a party from performing similar services during the term of his agreement for any other person than the party entitled to them under the contract. This was still further and very fully considered again in *Daly* v. *Smith*, 49 How. Pr. 150, and the result was that an injunction to this extent was held entitled to be maintained, where the facts were such as to justify its allowance. This principle was again followed in *McCall* v. *Braham*, 16 Fed. Rep. 37; and the case of *Butler* v. *Galletti*, 21 How. Pr. 465, has a decided tendency to support the same conclusion. And, as courts of equity, as a general rule, permit the order of injunction to be issued where its effect will be to restrain or prevent what would otherwise prove to be irreparable mischief or injury to the plaintiff, cases of this description appear to be fairly within the principle.

The defendant, however, has further resisted the allowance of the injunction in this action on the ground that the plaintiff himself has violated the agreement in such essential respects as entitle the defendant to be discharged from its further performance. This objection has been mainly placed upon the latter paragraph of the eighteenth division of the contract, by which the plaintiff agreed to have a lithograph of the defendant made and distributed as largely as that of any other tenor in the Abbott company, and that he should be as well advertised in programmes and newspaper advertisements. Each of these obligations, it has been charged, the plaintiff failed to observe or perform. He did, however, distribute lithographs of the defendant, but they were not of himself alone. They contained eight leading members of the company, while the defendant insisted that the lithograph of himself should be distinct and separate from that of other persons. It is not, however, important to determine whether he is entitled to this construction of this part

of the agreement, for the reason that he did not sever his connection with the Abbott company on this account, but that resulted from the failure of the plaintiff to advertise him as well as the other tenor in the Abbott company had been advertised, and in this respect he seems to have well-grounded cause for complaint. There was another person employed as a tenor singer in the Abbott company, and preferences, in at least one of the programmes or bills, and in certain advertisements, were given to this tenor over the defendant. They have, it is true, been explained by the affidavit of the plaintiff, and other affidavits in the case, in such a manner as to indicate that this was not intentional, but in most instances the result of circumstances; but, at the same time, the defendant was placed at a disadvantage by these circumstances, concerning which he had just ground of complaint, for that led to public comments injurious to himself, and to his standing as the superior tenor singer of the company. But the defendant was not justified in severing his connection with the company by reason of any of these mistakes or failures prior to February, 1890, for he was promised that they should be avoided in the future, and no discrimination of a similar character permitted to be made against him; and upon the promises to him he continued in the service of the plaintiff, and waived the grounds of complaint previously existing. But on the 24th of February, 1890, a performance by the troupe was given in the city of Washington, where the defendant resided, and where it would have been a matter of pride to him to have had the advantage of the advertisement secured by this part of the contract. Prior to the performance in Washington the troupe was in the city of Baltimore, and the defendant has stated in his affidavit that the plaintiff informed him that he was booked to sing at Washington on the opening night of February 24th, and that he could go there whenever he desired; that he left on the morning of the 21st, and on the 24th received a letter from the plaintiff, stating that he supposed the defendant was in Washington, and would be on hand that night; that he did appear, and took the part assigned to him in the performance, but that it turned out afterwards that the other tenor singer of the company had been advertised instead of himself for this performance, and that the commendations of the press were on that account given to the other person instead of himself, and for that reason he discontinued his connection with the plaintiff's company, although the latter, in the afternoon papers, had corrected the mistake of attributing the performance to the other tenor instead of the defendant. The plaintiff, in his own affidavit, stated that the defendant was not to be assigned to this position at the opening night in Washington, but that it had been given to the other tenor with the knowledge of the defendant, and Mr. Consadine, who was connected with the company, states in his affidavit that he had been directed by the plaintiff to put the other tenor in the cast in the role of Ernani, which was finally, in this manner, taken by the defendant. But it is not pretended by this person that the defendant was present when this direction was given, or was made aware of it either by himself or by the plaintiff, and the defendant's wife corroborates him in the statement that he was informed by the plaintiff before they left Baltimore that this part was assigned to the defendant, and the letter which was written by the plaintiff to the defendant on the 24th of February confirms the probability that the defendant is right in the statement which he has made concerning this occurrence. The plaintiff swears that he explained to the defendant on the 24th inst. that he was to take the place of the other tenor on account of his inability to fulfill the engagement, but that the defendant has denied; and this letter tends to sustain the truth of the defendant's denial, for its statement is: "I have not seen or heard from you since last Thursday, but suppose you are and will be on hand to-night." This excluded the possibility of the information stated to have been given to the defendant, for the reason that the plaintiff had not seen him, and, accordingly, could not have made the communica-

tion to him which it is stated by him that he did make. The further fact has been shown by the affidavits that the name of the other tenor was upon the bill in that part of the theater to which the actors had access, but the defendant denies having seen that, or knowing anything of the fact, until the following morning, when the credit of the performance was given by the press to the other tenor of the company. The probabilities therefore are decidedly with the defendant in these statements, and prove the fact with reasonable certainty to have been that he was assured by the plaintiff that this position was to be assigned to him in the performance at the city of Washington on the evening of the 24th of February, and that he joined the company, and rendered services, under that assurance, while the fact was that the position had not been assigned to him either in the advertisement or on the bills, and that the credit due to himself had in this manner been given to another. This was a violation of the part of the agreement requiring him to be as well advertised in the programmes and newspapers as the other tenor. It at least entitled him to be advertised and named on the bills as the person who was to perform this role on the evening of the 24th of February, and, in failing to advertise him and place his name upon the bills, the plaintiff violated his agreement, and that violation was of so essential a character as to absolve the defendant from further liability by way of performing this contract. For that reason the injunction, which otherwise might be legally issued, is deprived of its support. On the 1st of March, 1890, the plaintiff sent to the defendant an account of the week ending that day, in which he credited the salary and deducted the charges for performances and rehearsals missed, and stated a balance of $5.20 to be due to the defendant; and this balance was paid to him, but no intention appears from the receiving the money to surrender his right to abandon the contract for what had previously occurred. In and of itself it is entitled to no effect in the disposition of the appeal, but the order should be reversed, with $10 costs and the disbursements, and the motion denied.

VAN BRUNT, P. J., concurs. BRADY, J., concurs in result.