(99 App. Div. 231)

SAMUEL CUPPLES ENVELOPE CO. v. LACKNER.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. COMPLAINT—EXHIBIT.

Where a contract sued on is annexed to the complaint and made a part thereof, the rights of the parties are to be determined by the contract, rather than the general allegations of the complaint concerning its effect.

2. SAME—VERIFICATION—INJUNCTION.

Where neither the sources of information nor the grounds of belief are stated in the verification of a complaint, they constitute no proof of the facts, and hence an injunction pendente lite cannot be issued thereon.

3. CONTRACT—BREACH—AFFIDAVITS—SUFFICIENCY.

Under a contract appointing the plaintiff as exclusive selling agent of defendant's "paper specialties," affidavits showing a sale by defendant of "chop-holders" without the plaintiff's consent do not show a breach of the contract, where the material from which the chop-holders are made is not shown.

4. SAME—INJUNCTION.

Under a contract appointing the plaintiff as exclusive selling agent for the defendant's "paper specialties," and providing that plaintiff would purchase those goods which defendant manufactures and for which plaintiff may have a sale, "and any other articles in the line of paper specialties which defendant originates and which plaintiff may be able to sell,"

the plaintiff is not entitled to an injunction to prevent a breach of the contract by defendant as to articles for which plaintiff has given no order to defendant, and which it has not shown that it would have been able to sell, especially in the absence of an allegation in the complaint of irreparable injury, or facts showing that plaintiff has not an adequate remedy at law, or that plaintiff, on the strength of the contract, has made contracts for the sale of the goods sold by defendant without plaintiff's consent, which it will be unable to fill, and therefore become subject to an action for damages.

Appeal from Special Term, New York County.

Suit by the Samuel Cupples Envelope Company against John Lackner. From an order of injunction pendente lite, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Thomas A. Atchison, for appellant.
Malcolm W. Clephane, for respondent.

LAUGHLIN, J. The action is based upon a contract, and, although not directly for specific performance, yet this is sought indirectly by an injunction restraining a breach of the contract by the defendant. The plaintiff is engaged as a sales agent in marketing paper specialties, and it has a branch agency and agents in the city of New York, and in various other places throughout the United States. The defendant is engaged in manufacturing paper specialties in the city of New York. On the 15th day of March, 1904, a contract in writing was made between the defendant and F. M. Kimbark in the name of the plaintiff, which purports to. contain the following covenants and agreements on the part of the respective parties, to wit: On the part of the defendant, that he appointed the plaintiff his exclusive selling agent in the United States for the sale of "paper specialties" then manufactured or thereafter to be manufactured by him or his successors or assigns; that he would furnish, "with all reasonable dispatch, upon the order of the plaintiff, any goods manufactured by him, his successors or assigns"; that the prices of the goods so to be furnished by the defendant should be "at all times at least twenty per cent. below the ruling jobbers' purchase prices for like goods as sold to jobbers in any part of the United States, provided always that such prices was thirty per cent. above the cost of manufacture of such goods to said John Lackner"; that, if such prices should not provide for 30 per cent. profit to the defendant, then the prices should be regulated "by special agreement, by which reasonable figures shall be decided upon"; that, should the prices agreed to be paid by the plaintiff to the defendant provide for a profit in excess of 30 per cent. above the cost of manufacture, "then the prices of such goods shall immediately be readjusted so as to permit a manufacturer's profit to said John Lackner, and all profits in excess thereof which shall have been received by said John Lackner from said envelope company shall forthwith be divided between the parties hereto"; that he would loan the plaintiff his books for a period of one year from date, and also the books then in his possession and owned by

him standing in the name of F. C. Cassell; that he would furnish the plaintiff samples of paper specialties "manufactured or to be manufactured by him, to the value of $500 annually, at half the actual cost thereof, said $500 representing the cost"; that he would "ship or deliver all goods which may be ordered by said envelope company when and in the manner ordered"; and, on the part of the plaintiff, that it would use its best endeavors to sell the entire product of the defendant's factory, and to increase the sales during the second year of the contract period by 10 per cent. over those of the first year, and those of the third year by 10 per cent. over those of the second year; that it would purchase from the defendant "exclusively those goods which he manufactures and for which it may have a sale, and any other articles in the line of paper specialties which he originates and which it may be able to sell"; that it would pay to the defendant on the 1st, 10th, and 20th of each month "for all goods which it may have received and accepted from said John Lackner during the preceding interval"; that the plaintiff might label, in a manner satisfactory to it, all goods "sold to it" as follows: "Manufactured by John Lackner. Samuel Cupples Envelope Co., Sole Selling Agent, New York City"; that it would advertise the goods as manufactured by the defendant; that it would deliver to the defendant's landlord the sum of $108.33 on the 1st day of each month "as rent in advance, until the 1st day of May, 1906, the expiration of the lease now held by John Lackner." The contract was to continue during a period of three years, and with the exception of a covenant for renewal by mutual agreement, to be made six months prior to its expiration—which manifestly was not binding—the foregoing are its only material provisions.

The contract is annexed to the complaint, and made a part thereof. The rights of the parties, therefore, are to be determined by the contract, rather than by the general allegations of the complaint concerning the effect thereof. The complaint alleges that the plaintiff has fully performed the contract on its part, but that the defendant has "solicited orders from, and made sales to, persons, firms, or corporations other than the plaintiff of said paper specialties of his manufacture, without the consent of the plaintiff, and is still continuing so to do, thereby depriving the plaintiff of its just profits and injuring the business of the plaintiff, by which the plaintiff alleges that it will suffer damages in the sum of $2,000"; and judgment is demanded perpetually enjoining the defendant, during the term of the contract, from selling or endeavoring to sell and from delivering "any of the goods of his manufacture to any person, firm, or corporation other than the plaintiff, or from otherwise injuring in any way the business of the plaintiff," and for a temporary injunction to like effect, and for the damages sustained and costs.

None of the allegations of the complaint is stated to be made on information and belief. The verification is made by said Kimbark. It is made in the usual form, except that he says that he is the manager of the plaintiff, and that the reason the verification is not made by it is that it is a corporation. The motion for the injunction was brought on an order to show cause, and was made on the

complaint and three affidavits. The defendant opposed the granting of the motion solely on the ground of the insufficiency of the moving papers. The affidavits, in addition to the formal requirements, show a single sale by a former soliciting agent of the plaintiff after his discharge of 3,000 "chop-holders" to the Hotel Navarra, in the city of New York, for $1 per thousand; that the bill therefor was rendered by the defendant to the hotel and paid; and that this sale was not authorized by the plaintiff. There are other allegations in the affidavits based upon information and belief, but neither the sources of the information nor the grounds of the belief are stated. They constitute no proof of the facts. Mowry v. Sanborn, 65 N. Y. 581. I am of opinion that the moving papers were insufficient to warrant the injunction order pendente lite. There is no allegation that Kimbark was the general manager of the plaintiff, or that the execution of the contract by him was authorized, or that it has been performed in part; but doubtless the defendant would be estopped from questioning the validity of the contract, and the bringing of the action would be a ratification thereof by the plaintiff. The fair construction of the contract limits its binding scope strictly to "paper specialties" manufactured by the defendant. By its express terms, it presupposes that the defendant may originate other articles or novelties in the line of paper specialties, and these the plaintiff was to have the privilege of taking, provided it should be able to sell them. There is no allegation in the complaint or averment in the affidavits showing that chop-holders are paper specialties. It does not appear of what material they are manufactured. The plaintiff therefore fails to show that the defendant has made any sale in violation of the contract. Moreover, there is no allegation in the complaint of irreparable damages, and no facts are stated, either in the complaint or in the affidavits, showing that the plaintiff has not an adequate remedy at law for any damages it has sustained or may sustain by a violation of the contract on the part of the defendant. It does not appear that the plaintiff has given the defendant any order for these goods, as contemplated by the contract, or that the plaintiff would have been able to sell them. It is evident that many of the provisions of the contract are of such a nature that they could not be specifically enforced, and the court will not undertake to supervise the performance of such contracts, but, in a proper case, where irreparable damages are shown, will enjoin a violation of a so-called negative covenant. Standard Fashion Co. v. Siegel-Cooper Co., 30 App. Div. 564, 52 N. Y. Supp. 433, affirmed 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, 68 Am. St. Rep. 749. It does not even appear that the plaintiff upon the strength of the contract has made other contracts for the sale of these goods which it will be unable to fulfill, and will thereby become subjected to an action for damages; and, if it had, it is doubtful whether the injunction would be authorized, at least without showing irreparable damage. New Hartford Canning Co. v. Bulifant, 78 App. Div. 6, 78 N. Y. Supp. 951, and cases cited. Even in the cases of contracts for the performance of "special, unique, and extraordinary" personal services, where the court,

although unable to compel a specific performance, will enjoin a violation of a negative covenant—the performance of the same or similar services for others or elsewhere—this relief is only granted upon the theory and where it is shown that the damages are irreparable. Metropolitan Exhibition Co. v. Ward, 24 Abb. N. C. 393, 9 N. Y. Supp. 779; Pratt v. Montegriffo, 25 Abb. N. C. 334, 10 N. Y. Supp. 903; Metropolitan Exhibition Co. v. Ewing (C. C.) 42 Fed. 198, 7 L. R. A. 381; Strowbridge Lith. Co. v. Crane (Sup.) 12 N. Y. Supp. 898. The defendant has been enjoined from selling any of the products of his manufacture to any person other than the plaintiff, and neither by the injunction order nor by the contract is the plaintiff obligated absolutely to take and pay for such products.

For the reasons stated, therefore, the order should be reversed, with $10 costs and disbursements, and the motion to vacate the injunction granted, with $10 costs. All concur.