are enumerated and considered in the court below, it should be denied. The appellants, however, contend that such right is absolute; and reference is made, not only to the mandatory language of the Code provisions, but also to certain authorities,—particularly to Holsman v. St. John, 90 N. Y. 461, and Pringle v. Railroad Co., 27 App. Div. 144, 50 N. Y. Supp. 536. These are undoubted authorities in favor of the appellants' contention. The case of Pringle v. Railroad Co., supra, merely followed the decision in Holsman v. St. John, supra, in which the court of appeals said:

"All applications to continue an action in case of the death of a party must be made by motion, and upon proper affidavits showing the facts, and the court must grant the order. Even under the old Code, where the language was permissive, it was held by this court that in an action at law 'no mere lapse of time would absolutely defeat an application for its continuance on a supplemental complaint in the name of a representative of a deceased party.' Evans v. Cleveland, 72 N. Y. 486."

In the Pringle Case, supra, attention was not called to the three cases of Shipman v. Railroad Co., 11 App. Div. 49, 39 N. Y. Supp. 498, and 41 N. Y. Supp. 1131; Lyon v. Park, 111 N. Y. 350, 18 N. E. 863; and Mason v. Sanford, 137 N. Y. 497, 33 N. E. 546. In the latter case (137 N. Y. 500, 33 N. E. 547), upon a review of the authorities, it was said:

"The rule as to the revival of actions by the substitution of the representative of a deceased party in this state is as follows: In legal actions there is no mere time limitation, but the motion to revive may be denied for laches in making the motion. In equity actions there is a time limitation of ten years; but in such actions, on account of prejudicial laches, the court may refuse the revivor within the period of limitation."

Although there thus appears to be a conflict of authorities, this court should follow the later decisions, not only because in point of time they are the later expressions of our court of appeals, but also because they seem to be founded upon stronger reasons, and recognize the force of the decisions in our courts which uniformly support the discretionary power in determining whether or not relief should be accorded where there is laches.

As, under the rule stated, laches is a bar to the right to have an action revived, it follows, for the reasons given by the learned judge in the opinion below, that the order appealed from should be affirmed, with $10 costs and disbursements. All concur.

---

(33 App. Div. 409.)

STANDARD AMERICAN PUB. CO. v. METHODIST BOOK CONCERN IN CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. October 21, 1898.)

CONTRACTS—ASSIGNMENT—ESTOPPEL.

A contract by which defendant M. sold to J. certain rights in a book, and bound itself not to sell to others except in a certain way, having been assigned to plaintiff, and it having been treated as such assignee by M., and having made large expenditures, necessary as such assignee, to the knowledge of M. and defendant K., before M. gave K. rights of sale in violation of such contract, M. and K. are precluded from claiming that the contract did not authorize an assignment of the entire interest therein.

Appeal from special term, New York county.

Action by the Standard American Publishing Company against the Methodist Book Concern in the City of New York and another. From an order denying plaintiff's motion to continue a temporary injunction, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Frederick R. Kellogg, for appellant.
Josiah T. Marean, for respondents.

RUMSEY, J. This action is brought to restrain the violation by the defendant the Methodist Book Concern of a contract made with one Walter M. Jackson, by which the defendant corporation sold to Jackson the right to print and sell for three years from September 1, 1896, the People's Cyclopedia of Universal Knowledge, from plates, maps, charts, and illustrations then owned by the Methodist Book Concern, and further agreed to give to Jackson an option to continue the contract for further periods of one year each until September 1, 1904. The Methodist Book Concern further agreed that it would not make any similar arrangement with any other parties, nor sell the work itself from the plates during the continuance of the agreement, except in a manner more particularly specified in that agreement. The complaint alleges that this agreement was assigned by Jackson to the plaintiff, the Standard American Publishing Company. It further alleges that on the 10th day of March, 1898, the defendants, the Methodist Book Concern and Henry W. Knight, entered into a contract by which all the plates of the People's Cyclopedia of Universal Knowledge were sold to Knight, without any limitations of the right to use them, and that Knight was proceeding to print large editions of that book for distribution among other people in a way which was not permitted by the contract between the Book Concern and Jackson. The plaintiff, at the time of commencing the action, procured an injunction restraining Knight from delivering or permitting to be delivered any copy of the book to any persons except in the manner and to the persons provided for by the contract between the Methodist Book Concern and Jackson, and further restraining Knight from manufacturing or causing to be manufactured, or from receiving, selling, or otherwise disposing of copies of said work in any manner whatever. An order to show cause was made why this temporary injunction should not be continued, and upon the hearing of that order the court refused to continue the injunction, and vacated it, and from the order thus vacating it this appeal is taken.

It cannot be disputed that by the contract between the Methodist Book Concern of one part and Jackson of the other part that corporation was precluded, during the existence of this contract, from a sale of the People's Cyclopedia of Universal Knowledge, except in the manner specified in that contract, which was at the prices at which that corporation then sold it, and by subscription through canvassers or general agents. Jackson had bought from the cor-

poration the sole right to sell the book except in certain portions of the United States, and so far as the Book Concern might see fit to sell it by subscription through canvassers and general agents.   Nor can it be disputed that when the Methodist Book Concern entered into a contract with Knight by which the plates which it was bound to use in printing the editions for Jackson were sold to Knight, and which did not limit Knight as to the manner of sales or the persons to whom, or the prices at which he should sell, it was substantially a violation of its contract with Jackson, by which it had limited itself as to the manner of sales and the price.   If other conditions existed which made the case proper for an injunction, it is quite clear that these facts were sufficient foundation for the equitable interposition of the court.   Standard Fashion Co. v. Siegel-Cooper Co., 30 App. Div. 564, 52 N. Y. Supp. 433.   It needs no argument to show that the contract between Knight and the other defendant, if carried into effect, would be exceedingly injurious to Jackson, who had acquired this valuable right from the Methodist Book Concern at a considerable expense.   Nor is it necessary to argue that Jackson himself would have been entitled to an injunction to restrain the violation of his contract.   The case just cited is a sufficient authority, if authority were needed.   But it is objected on the part of the defendants that the plaintiff has no standing to enforce this contract as an assignee of it, because it is said that the contract was not assignable in its nature, and that, if it had been assignable, the right of Jackson to assign it was especially limited by the agreement between himself and the Methodist Book Concern; and this contention of the defendants was the one adopted by the learned justice at special term, who vacated the injunction upon the ground that the plaintiff had not acquired any rights by the attempted assignment of the contract of Jackson.   We do not propose to discuss the question whether the contract was one in its nature assignable, because, in our judgment, the disposition of this appeal does not require a determination of that question.   A provision was made in the contract by which Jackson was permitted "to assign any part of this agreement to other parties whom he may desire to associate with him in the sale of these books."   Under the circumstances which have been shown to exist, the plaintiff acquired a right, under the assignment, pursuant to this provision of the contract, which the court is bound to protect.   It appears that the contract was made on the 19th day of June, 1896.   The assignment to the plaintiff was made by Jackson in the spring of 1897, but what precise date does not appear.   It does appear, however, that at once after receiving the assignment the plaintiff undertook the performance of the contract, and proceeded to procure the books to be printed by the Methodist Book Concern in pursuance of the contract, and to make provisions for their sale.   It is said, and such appears to be the fact, that, after receiving an assignment of the contract, this plaintiff expended a considerable sum of money in providing for carrying on the business, and now maintains a large and expensive organization and equipment for the sale of the work, and that it has entered into many contracts for the sale of the work in different localities

and to different people; and that, if it is not permitted to complete those contracts, or if the work is sold by other persons at a less price, so that plaintiff is substantially deprived of its monopoly, it will incur large losses. But the defendant says that this is a matter of no importance, because it claims that the only assignment which was permitted under this contract was an assignment of a part of the contract to persons who would be associated with Jackson in the sale of the book, and that it had no notice of the interest of the plaintiff in the contract, and that it had an assignment of it. It is quite true that the privilege to assign was limited to persons whom Jackson might desire to associate with him in the sale of the book. The effect of that limitation, or whether this plaintiff is not substantially within it because of the fact that Jackson is its largest stockholder, it is not necessary to consider. It may be assumed for the purposes of this discussion that the assignment was not within the strict privilege given by the contract between Jackson and the Methodist Book Concern, and that, if objection had been made to it at once by that defendant, the plaintiff here could have obtained no rights under the assignment. But when knowledge of this assignment came to this defendant corporation, and it knew that the plaintiff had acquired substantially the entire interest in this contract, it was bound, if it had any objection, to make that objection known at once. If it accepted the plaintiff as the owner of the contract, and permitted it to go on with the performance of it, knowing, as it must have known, that the performance would require considerable expense, and the incurring of large liabilities, it was precluded thereafter from any objection to the plaintiff as assignee of the entire contract. It appears from the first affidavit of Mr. Davidson, the treasurer and general manager of the plaintiff, that, soon after the assignment to the plaintiff, a large number of books were ordered by the plaintiff from the Methodist Book Concern; and a subsequent affidavit made by him, to which are annexed receipts and letters passing between the plaintiff and the Methodist Book Concern, show that as early as December 9, 1897, the Methodist Book Concern received from the plaintiff the money due for the half-yearly royalties under the contract with Jackson. It appears further that the books ordered pursuant to the contract were paid for by notes of the plaintiff indorsed by Jackson, and there can be no doubt from the evidence submitted by the plaintiff that at least from the 9th of December, 1897, the Methodist Book Concern was fully cognizant of the fact that the plaintiff was the assignee of this contract, and had entire control of it. Indeed, the plaintiff alleges that the defendant Knight, as manager of the Methodist Book Concern, of their subscription book department, had personal knowledge of all the rights of plaintiff before the year 1898. This is not denied by the defendant corporation, nor is that allegation of the complaint referred to in any way in the answer; so that, so far as the defendant corporation is concerned, it stands admitted that its manager, who signed the contract with Jackson on its behalf, had knowledge of all the rights of the plaintiff under the contract before the year 1898, and before any effort was made to transfer the contract to

him.  Neither does the defendant Knight, in his answer, deny the allegation as to his knowledge of the rights of the plaintiff.  It is quite true that he says in his affidavit that he never had any notice of any pretended right of the plaintiff under the contract with Jackson until the service of the complaint, but this statement is not consistent with the admission in his answer.  Mr. Mains, who was one of the firm of Eaton & Mains, the general agents of the Methodist Book Concern, testifies that, as he is informed and believes, that concern had no notice of any assignment to the plaintiff of his contract; but, as he does not state the source of his information, or the grounds of his belief, his affidavit is of very slight importance, in view of the admission in the pleadings that the manager of the subscription book department, who made this contract, had been informed of the rights of the plaintiff before the year 1898.  The case must therefore be decided upon the theory that this assignment and the rights of the plaintiff under it were made known to the Methodist Book Concern, and were also known to Knight, long before the contract between Knight and that defendant was made.  It is claimed, too, that there is no intention on the part of Knight to violate the contract.  This claim is thoroughly disposed of by the letters of Knight, which are in the record, which show that he is printing a large number of copies of these books for other persons than those to whom, by the contract with Jackson, the books were to be sold.  Upon consideration of the whole case it seems to us that, so far as the injunction restrained Knight from selling or delivering, or permitting to be sold or delivered, any copies of the work to any other person or persons than the plaintiff, or pursuant to subscriptions obtained by the defendant the Methodist Book Concern through canvassers or general agents, and at the same price as those at which the work had, on June 19, 1896, been sold by the Methodist Book Concern, it should be restored; but the remainder of the injunction, which restrains the defendants from manufacturing or causing to be manufactured, or from receiving, selling, or otherwise disposing of any copies of said work in any manner whatsoever, is too broad, and it is not consistent with the other portion of the injunction.  There is no reason, under the contract with Jackson, why the Methodist Book Concern should not print as many of these books as it sees fit, and the books thus printed it is at liberty to sell in the manner provided by its contract with Jackson, and the only injunction to which the plaintiff is entitled is to restrain a delivery of the copies of the book to persons who are not entitled to receive it under the contract with Jackson, and to whom, pursuant to that contract, it should not be sold.

The order, therefore, refusing to continue the injunction must be reversed, without costs to either party, and the motion for injunction granted to the extent above stated, with $10 costs to abide event. All concur.