(44 App. Div. 454.)

GODDARD et al. v. AMERICAN QUEEN.

(Supreme Court, Appellate Division, First Department. November 24, 1899.)

1. REVIEW—DEFENSES—FINDINGS OF FACT.
   A defense that to compel defendant to specifically perform a contract for the exclusive advertisement of an article in its magazine will create great hardship, in excluding the magazine from the right to second-class postal rates, will not be considered on appeal, in the absence of any finding of fact respecting such defense by the trial court.

2. CONTRACTS—SPECIFIC PERFORMANCE—DISCRETION.
   While the right to specific performance of a contract rests in judicial discretion, yet where the court found that plaintiff could not be compensated in damages for defendant's refusal to comply with its contract not to advertise a similar article to that advertised by plaintiff in its magazine, where no sufficient excuse for such refusal was proved, it becomes the court's duty to grant plaintiff equitable relief.

3. SAME—DECREE—EXECUTION.
   Equity may properly decree specific performance of a contract for an exclusive right to advertise a certain class of goods, the character of which was easily determined, in defendant's monthly magazine for 18 months, since contempt of such decree could only occur once a month, and each violation would be a single, completed act.

4. SAME—THIRD PARTY'S RIGHTS.
   Specific performance of a contract will not be withheld because it might injuriously affect the rights of an innocent third party, where such person was joined as a party defendant to the action, and dismissed on his application, and there was no proof of such party's rights, but a mere inference of the trial court, not supported by the record.

Appeal from special term, New York county.

Injunction by Warren N. Goddard and others against the American Queen, Incorporated, and others. From a judgment dismissing the complaint (59 N. Y. Supp. 46), plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

L. E. Warren, for appellants.
H. F. Ives, for respondent.

PATTERSON, J. The defendant, the American Queen, Incorporated, was the proprietor and publisher of a monthly magazine; and in the month of July, 1898, it, through its manager, made a contract with the plaintiffs to insert in its magazine an advertisement of a manufactured article, for the sale of which the plaintiffs were sole agents. The article was known as "Feder's Pompadour Skirt Protector." The contract contemplated two things: First, the insertion of an advertisement of the plaintiffs' wares for a period of 18 months; second, that the defendant named should refrain from publishing any advertisement for others than the plaintiffs of skirt protectors or of skirt bindings with an edge similar to or resembling

the edge of the Feder Brush Skirt Protector. It is alleged in the complaint that the defendant, notwithstanding the terms of its contract with the plaintiffs, entered into an agreement with the Stewart, Howe & May Company, which was also made a defendant, to advertise in its magazine goods of that company; that it was an advertisement of skirt protectors or skirt bindings with an edge similar to or resembling the edge of Feder's Skirt Protector; that the defendant refused to perform its agreement with the plaintiffs, who had furnished to the defendant the necessary matter for an advertisement to be inserted in the September, 1898, number or issue of the magazine; and that the defendant published its September number without the plaintiffs' advertisement, but with an advertisement of the Stewart, Howe & May Company's competing goods. In the complaint it is also alleged that the defendant was preparing to issue a number of its magazine for the month of October, 1898, and that it refused to comply with its agreement for the exclusive publication of an advertisement of the plaintiffs' wares, and insisted upon publishing an advertisement for the Stewart, Howe & May Company, and threatened in the future to insert the advertisement of that company for the whole or a large part of the period of time covered by the plaintiffs' contract; that the plaintiffs would be put to irreparable loss and injury if the defendant were permitted to continue to break its contract, and to refuse to advertise the plaintiffs' goods and continue to advertise the manufactures of the Stewart, Howe & May Company, and therefore the action was brought for the specific performance of both the positive and negative terms of the plaintiffs' contract. And relief was asked, of a permanent injunction restraining the defendant from publishing the Stewart, Howe & May Company's advertisement, or any other advertisement than that of the plaintiffs, of articles such as they manufactured, and which were to be the subject-matter of the advertisement contracted for between the defendant and the plaintiffs. Both the American Queen and the Stewart, Howe & May Company answered. On the trial the complaint was dismissed as to the latter company, because it was not shown that it was in any manner directly connected with a violation, either actual or intended, of the contract made between the American Queen and the plaintiffs. No question as to that ruling is now presented. The American Queen Company, in its answer, admitted that it inserted in its September number an advertisement for the Stewart, Howe & May Company, substantially as alleged in the complaint, and sets forth that it entered into a contract in December, 1897, with the Stewart, Howe & May Company, to continue during the years 1898 and 1899 advertisements for that company. It then states that that contract is referred to as part of the answer, but it does not appear in any way in connection with the answer, nor in evidence. The American Queen Company further sets forth in its answer that in 1897 the plaintiffs entered into a contract with it to publish an advertisement of Feder's Brush Skirt Protector upon the condition that no advertisement of infringers upon or against the Feder Skirt Protector should be published in the defendant's magazine during the term of the contract,

and that on the 28th of July, 1898, negotiations were entered into between the plaintiffs' agent and the defendant regarding an insertion in the defendant's publication of an advertisement of the Feder Protector or Skirt Binding, and that, as a result thereof, an agreement was made between the plaintiffs' agent and the defendant to publish an advertisement of the plaintiffs upon the same conditions as those of the previous contract of 1897, and that neither the defendant, nor any of its officers or agents, had any right or authority or power to enter into the contract made; that the defendant's manager signed the contract upon which the plaintiffs sue, without knowledge upon the part of such manager that the contract contained the condition respecting the nonpublication of an advertisement of a skirt protector or skirt binding similar to or resembling the edge of the Feder Protector; and that the defendant did not intend to preclude, nor did it preclude, itself from the insertion of the advertisement of the Stewart, Howe & May Company under its contract with that company. The answer then sets up that in February, 1898, the American Queen Company applied to the post-office department of the United States, in the city of New York, to have its magazine pass through the mails at second-class rates of postage, and that on making such application it was obliged to agree, as a condition of obtaining that privilege, that it would receive and publish advertisements of any reputable business house, and, upon such agreement being made, the application was granted. It then alleges, on information and belief, that the condition in the plaintiffs' contract concerning the nonpublication of any other advertisement than the plaintiffs is in violation of the laws, rules, and regulations of the post-office department, and its agreement with that department, and that the performance of its agreement with the plaintiffs would render it subject to the revocation of the second-class rate privilege, and that that would result in the destruction of its business, for a reason assigned in the answer. It further alleges that, immediately upon being apprised of the condition contained in the plaintiffs' contract, it notified the plaintiffs of its refusal to publish its advertisement under the condition of exclusion, but offered to publish that advertisement without condition, except that it would not publish advertisements of infringers upon the plaintiffs' patented article; and it prayed judgment that the complaint be dismissed; that the alleged agreement set forth in the complaint with the plaintiffs, so far as the same purports to exclude the Stewart, Howe & May Company's advertisement, or an advertisement of any other reputable business house, be decreed to be unauthorized and void, or that the agreement alleged in the complaint made with the plaintiffs be reformed and changed; and for further relief.

The evidence adduced at the trial failed to establish any misunderstanding on the part of the American Queen Company's manager of the situation under which the contract ·with the plaintiffs was made, or of the exact terms and requirements of that contract. On the contrary, it is conclusively shown that it was with knowledge of that situation, and of what the plaintiffs desired, that the manager entered into the agreement, and assumed for the American

Queen Company the full obligations of that contract, which was a beneficial one to defendant, as it increased the amount of the plaintiffs' advertisement very considerably. The trial court found that the agreement with the plaintiffs was made to secure to the plaintiffs a great advantage and increase of sales, to be obtained by the exclusive advertisement of its goods in the American Queen Magazine, and that such magazine was a most valuable advertising medium for the plaintiffs' goods; that the plaintiffs had sustained loss and injury, and consequent damage, by reason of the refusal of the American Queen to carry out its contract. In deciding the cause the justice at special term gave permission to the plaintiffs to elect within 15 days to prove their damages before a jury, which they declined or failed to do; and thereupon, in finally disposing of the issues, the court dismissed the complaint, stating the reason therefor in the conclusions of law, as follows:

"The ground upon which this decision is based is that although the defendant, the American Queen, Incorporated, has clearly violated its contract with the plaintiffs, and the latter having suffered injury thereby, which probably cannot be compensated in money damages, the court will not undertake the enforcement of plaintiffs' said contract, because such enforcement would require continued and detailed labor and supervision on the part of the court in its specific performance, and for the reason that prior rights of an innocent third party, the Stewart, Howe & May Company, would be infringed, and it would suffer damage by reason of the nonperformance of its prior contract, if the negative provisions of the plaintiffs' contract are enforced by the court."

Upon comparing the findings of the court with the defenses set up in the answer, it will be observed that no facts are found respecting the defense of hardship, as connected with the allegations of the answer relating to postal laws and postal privileges. We are therefore not required to consider that defense, but will confine ourselves to the consideration of the two grounds upon which the complaint was dismissed. The conclusion of law found by the learned judge contains the adjudication that the plaintiffs have suffered injury which probably cannot be compensated in money damages,—a conclusion which is obviously right. Unless it be directed by a court of equity that the contract must be specifically performed, the plaintiffs are remediless. While the right to specific performance by decree of a court of equity rests in judicial discretion, and may be granted or withheld upon a consideration of all the circumstances of a particular case (McCabe v. Matthews, 155 U. S. 550, 15 Sup. Ct. 190, 39 L. Ed. 253; Heller v. Cohen, 154 N. Y. 306, 48 N. E. 527, and cases cited), it is the duty of the court to grant equitable relief where a remedy does not exist at law, where great injury will result to an innocent party unless a court of equity interferes, where the rights of a plaintiff are thoroughly established, and where, as in this case, a sufficient excuse for nonperformance has not been proven. Under such circumstances, judicial discretion to grant relief becomes judicial duty to grant it. One ground upon which specific performance was refused in this case is a supposed difficulty the court would encounter in compelling the American Queen to perform its contract, and in the enforcement of the negative provision. That such provisions in a contract will be specifically enforced was

settled by what was held in Standard Fashion Co. v. Siegel-Cooper Co., 30 App. Div. 564, 52 N. Y. Supp. 433, affirmed in 157 N. Y. 60, 51 N. E. 408. As was said by this court in that case, the general rule is, not to decree specific performance of contracts which by their terms stipulate for a succession of acts whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision and direction. But in the case at bar there is no such necessity. The simple obligation rested upon the American Queen to refrain from publishing any advertisement, for any other party than the plaintiffs, of a particular kind of article, so plainly described in the contract with the plaintiffs that a simple inspection of any advertisement offered by a rival of the plaintiffs would enable the defendant to determine immediately whether or not it was of goods of the same character as those advertised by the plaintiffs. The article was a skirt protector having any kind of an open or brush-like edge. It would require an officer of the court to determine whether advertisements of skirt protectors in the defendant's magazine were of goods having an open or brush-like edge. The advertisement offered by and published for the Stewart, Howe & May Company is in the record, and is of a brush-like edge skirt binding. The American Queen Magazine was issued once a month. An advertisement of a rival of the plaintiffs would be inserted but once a month. Any violation of a decree of the court would be a single act, that could only occur once a month; and, upon process for contempt for disobedience of a decree, the court could very readily determine whether a particular advertisement violated that decree or not. We think, therefore, that the complaint was improperly dismissed upon that ground.

The only remaining ground upon which the complaint was dismissed is that the enforcement of the contract would interfere with the prior rights of the Stewart, Howe & May Company. It is to be observed that that company claims nothing here. It was a defendant. It did not assert its rights as against the plaintiffs, but sought and procured its dismissal from the action. How far the court would go in releasing a defendant from the obligation of a contract deliberately entered into, upon a plea that detriment might result to some noncomplaining third party if the obligation were enforced, is a matter we are not called upon now to determine; for there is nothing in this record which establishes, as matter of fact, that prior to the plaintiffs' contract the American Queen became bound to the Stewart, Howe & May Company to insert anything and everything that might be tendered to it as an advertisement by the last-named company. All there is in the evidence upon that subject is a letter written by the American Queen's officer or agent to the plaintiffs' agent, after the contract with the plaintiffs was made, in which it is stated that the American Queen had then a partially performed running contract for advertising with the Stewart, Howe & May Company. What that contract was, and what its terms were, do not appear. The learned judge at the special term says in his opinion:

"Although the terms of that contract do not appear, the only inference that can be drawn from the evidence upon that subject is that it was broad enough

to require the publication of the Stewart, Howe & May Company's advertisement which appeared in the American Queen subsequent to the date of the contract with the plaintiffs."

We do not find anything in the record which authorizes the drawing of such an inference. As against these plaintiffs, who stand before the court in the position of helpless parties, without any remedy whatever, unless it be that of specific performance,—"a remedy which should not be denied them upon a simple inference,"— there is nothing but a statement of the defendant as to a general contract made with a third party.

We are of the opinion that neither of the grounds upon which the case was dismissed was such as to authorize the judgment that was rendered, and it should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.